Larry THOMPSON, et al. *v.* POTLACH CORPORATION

95-386                                           930 S.W.2d 355

Supreme Court of Arkansas
Opinion delivered October 14, 1996

*Wells Law Office*, by: *Bill G. Wells*, and *Bowden Law Firm*, by: *David O. Bowden*, for appellants.

*Haley, Claycomb, Roper & Anderson*, by: *Richard L. Roper*, for appellee.

BRADLEY D. JESSON, Chief Justice. Appellant Larry Thompson, an officer of the Pair-O-Geese Hunting Club, claims that the Potlatch Corporation orally agreed to lease the club hunting and trapping rights to certain lands in Bradley County. When Potlatch leased the rights to others, Thompson filed suit for specific performance. The chancellor ruled against the club, finding that no contract had been formed between Pair-O-Geese and Potlatch. We affirm.

Hunting clubs such as Pair-O-Geese have, for many years, hunted the woods of Bradley County on land now owned by Potlatch. In 1989, rumors began to circulate that Potlatch would begin formally leasing the hunting rights to its land. Larry Thompson, as a representative of Pair-O-Geese, visited the Potlatch offices to make an inquiry. He spoke with Curtis Blankenship, a Potlatch land representative. According to Thompson, Blankenship told him the following: that Potlatch was talking about leasing but didn't know when that might happen or how much would be charged to lessees; that Thompson should submit a letter requesting a lease and containing a legal description of the land desired; that Thompson should incorporate the hunting club; and that existing clubs would be given the right of first refusal. Blankenship's account of the meeting differs markedly. According to him, Thompson was told that if he forwarded a letter and a map of the desired area, Potlatch would keep it on file, as it did in the case of many other interested parties. Blankenship denied that he told Thompson to incorporate the club or that existing clubs would have right of first refusal.

In early 1990, Thompson incorporated the club. He sent the incorporation papers to Potlatch, along with the following letter:

> This letter is to request that Pair-O-Geese Deer Club have a chance to lease the highlighted areas indicated on the attached map when and if Potlatch decides to lease the land. We have been hunting this area for the past 40 years and

would like to continue if you would allow us to do so.

In 1991, Potlatch management gave its approval for a hunting lease program. On November 6, 1992, over 1,000 letters were mailed to sportsmen who had expressed an interest in leasing hunting rights from Potlatch. The letter read, in pertinent part, as follows:

Dear Sportsman:

For several months Potlatch management has been considering the possibility of beginning a hunting lease program. After careful deliberation a decision has been made to initiate a hunting lease program for the Southern Division of Potlatch Corporation in 1993.

As you are probably aware, for several years our Land Agent has been keeping a file of requests from hunters to lease hunting rights for specific areas of interest to them. From this file interested parties are being notified of Potlatch's policy change along with the basics of the program.

1. Leasing priority will be given to individuals and-or clubs that are already utilizing Potlatch's land. Other criteria will also be considered in determining the award of leases.

2. The cost of the program to the Lessee will be $2.50 per acre. Applications will be accepted on any size tract, but no lease shall cost less than $100.

3. Lessee will be required to be incorporated as a not-for-profit corporation under the laws of the State of Arkansas.

4. Lessee will not be required to furnish liability insurance.

5. There will be no subleasing of the leased lands.

Enclosed is a self-addressed postcard which should be completed and mailed back to Potlatch by December 1. This postcard will provide Potlatch with a current mailing address and indicate whether or not you desire to continue with the lease application process. For interested parties a lease application packet containing instructions for continuing with the lease process WILL BE MAILED in early 1993. The application packet will provide information but will in no way constitute a promise or commitment for a lease from Potlatch.

After mailing the postcard, YOU SHOULD NOT CONTACT POT-LATCH. You have done ALL that is necessary at this time. (Emphasis in original.)

The letter was signed by Potlatch representatives William Pope, Curtis Blankenship, and Gary Thornton.

Over 900 interested parties, including Pair-O-Geese, responded to the letter. Potlatch, in turn, sent a mailing to the interested parties on January 12, 1993. The mailing contained, among other things, a leasing-priority list and a hunting-lease application form. The priority list provided that applications would be ranked with preferences for established deer camps, adjacent landowners, local residents hunting on Potlatch lands, and other interested parties. The hunting-lease application requested general information about the prospective lessee and contained the following language just above the applicant's signature line:

I understand this application provides information and in no way constitutes a promise or commitment from Potlatch Corporation.

In April of 1993, Thompson noticed that other hunting clubs had received their leases but Pair-O-Geese had not. He contacted Gary Thornton at Potlatch and was told that his club would not receive a lease. Through his attorney, he sent a letter to Potlatch expressing a desire to lease the hunting rights to 354.3 acres and enclosing a check for $885.75. Potlatch returned the check.

On September 15, 1993, Thompson and other club members filed suit against Potlatch, William Pope, Curtis Blankenship and Gary Thornton in Bradley County Chancery Court.[1] The complaint alleged that Thompson's 1989 conversation with Blankenship constituted an offer to lease and that the club's subsequent incorporation constituted acceptance and consideration. No summons was issued for Potlatch. Instead, the complaint contained a certificate of service signed by the plaintiffs' attorney stating he had hand-delivered a copy of the complaint to Richard Roper, an attorney in Warren, Arkansas.

---

[1] Pope, Blankenship, and Thornton filed motions to dismiss which were granted by the chancellor.

Potlatch responded to the complaint on October 11, 1993, by filing a motion to dismiss for failure to state facts upon which relief could be granted. *See* ARCP Rule 12(b)(6). The motion was signed by attorney Roper. The appellants filed a motion to strike and a motion for default judgment claiming that Potlatch had missed the twenty-day deadline for responsive pleadings. *See* ARCP Rule 12(a). The chancellor denied the motions on two grounds: one, no complaint and summons were properly served on Potlatch or a person legally authorized to accept service, and two, under the case of *Citicorp Industrial Credit, Inc.* v. *Wal-Mart Stores, Inc.*, 305 Ark. 530, 809 S.W.2d 815 (1991), Potlatch had thirty days to respond to the complaint.[2] The order, which was filed December 6, 1993, also denied Potlatch's Rule 12(b)(6) motion to dismiss. Potlatch thereupon filed its answer on December 16, 1993.

A trial of the matter was held before the chancellor on September 26, 1994. After hearing testimony and reviewing the documentary exhibits, the chancellor requested briefs from the parties. The appellants' brief contained not only their arguments for specific performance, but, for the first time, alleged an entitlement to a lease through the doctrine of prescriptive easement. On November 18, 1994, the chancellor made the following findings:

> Plaintiffs seek specific perfòrmance of a purported contract based on a conversation between Plaintiff Larry Thompson and Potlatch representative, Curtis Blankenship, in late 1989. The testimony of Larry Thompson and Curtis Blankenship was at odds as to the content of that conversation.

> The burden of proof to establish the existence of a contract rests upon the Plaintiffs in this case. That burden is not met relying solely on the testimony of Mr. Thompson and Mr. Blankenship. Further, that burden is not met by considering the remainder of the evidence presented in this cause. In fact, much of the documentary evidence introduced into evidence preponderates against the formation of a contract in late 1989. (See first page of Defendant's Exhibit 1 [Thompson's first letter to Potlatch], Plaintiffs' Exhibits C and D) [Potlatch's January 12, 1993 letter and the Hunting Lease

---

[2] The *Citicorp* case held that foreign corporations doing business in Arkansas have thirty days to respond to a complaint under ARCP 12(a).

Application].

Also, there was no evidence presented by Plaintiffs as to when the purported contract was to begin, how long it was to last and what compensation would be paid. There was no evidence of a "meeting of the minds" on these matters.

Plaintiffs failed to prove their case by a preponderance of the evidence. Therefore, their complaint for specific performance should be denied.

Counsel for Defendant should prepare a proposed order pursuant to these findings and submit it to the Court, with a copy to opposing counsel. If there are any objections, they should be made known to the Court immediately.

The findings were incorporated into an order which was filed on December 16, 1994. The record reflects no objection from the appellants.

The first issue on appeal concerns the chancellor's denial of the appellants' motion to strike and motion for default judgment. The appellants claim that, despite our holding in *Citicorp, supra,* a foreign corporation located in Arkansas is not entitled to thirty days to respond to a complaint. We decline to address the substance of that issue because the record does not reflect the issuance of a summons. Rule 4(d)(5) of the Arkansas Rules of Civil Procedure requires that a corporation be served by delivering a copy of the *summons and complaint* to the appropriate person. *See also* ARCP Rule 4(d), which provides that the summons and complaint *shall be served together.* A certificate of service, such as the one used in this case, is no substitute for a summons. A summons is necessary to satisfy due process requirements. *Meeks v. Stevens,* 301 Ark. 464, 785 S.W.2d 18 (1990). Rule 4(b) of the Arkansas Rules of Civil Procedure sets out the technical requirements of a summons, and compliance with those requirements must be exact. *See Carruth v. Design Interiors, Inc.,* 324 Ark. 373, 921 S.W.2d 944 (1996). Since the appellants failed to issue an appropriate summons, the chancellor was correct in denying their motion to strike and their motion for a default judgment.

■■   Next, the appellants contend that the chancellor erred in finding that no contract existed between Pair-O-Geese Hunting Club and Potlatch. We do not reverse a trial court's findings of fact unless they are clearly against the preponderance of the evidence. ARCP Rule 52(a). In this case, there was ample evidence to support the chancellor's findings. Conflicting accounts were given of the 1989 meeting between Thompson and Blankenship. According to Blankenship, there was no promise of a right of first refusal and no offer to lease made to Pair-O-Geese. The chancellor chose to believe Blankenship. Deference is given to the superior position of the chancellor to judge the credibility of witnesses. *Riddick v. Streett,* 313 Ark. 706, 858 S.W.2d 62 (1993). The chancellor also noted, and we agree, that the documentary evidence belied any notion that Potlatch had made a contractual offer to Pair-O-Geese in 1989. Those documents indicated that Potlatch made its decision to begin leasing hunting rights in 1992 and, even then, cautioned interested parties that it was not making a promise or commitment regarding the leases. Additionally, the letter sent to Potlatch by Thompson in early 1990 indicates an awareness on Thompson's part that a leasing program was, at that time, a mere possibility.

■   The appellants make two final arguments on appeal, but we cannot address those arguments because they were not ruled upon by the chancellor. No findings were made regarding the appellants' claim that a contract was formed through their detrimental reliance on Blankenship's alleged promises, nor were any findings made concerning their prescriptive easement claim. Issues that are raised during the course of trial proceedings must be brought to the attention of the chancellor for a ruling before they are reviewable on appeal. *Britton v. Floyd,* 293 Ark. 397, 738 S.W.2d 408 (1987).

Affirmed.

ROAF, J., not participating.