Diane M. RAYMOND *v.* Daniel A. RAYMOND

CA 99-1232                                              19 S.W.3d 52

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered June 7, 2000

*Mashburn & Taylor,* by: *Scott E. Smith,* for appellant.

*Matthews, Campbell, Rhoads, McClure, Thompson, & Fryauf, P.A.,* by: *David R. Matthews,* for appellee.

SAM BIRD, Judge. The issue in this divorce case is whether Diane Raymond effectively entered her appearance by signing a "Conditional Reconciliation Agreement." We hold that the chancellor's decision was not clearly erroneous, and we affirm.

The Raymonds were married in 1988. During the course of the marriage, Diane became an alcoholic and drug abuser. On December 30, 1996, Daniel Raymond filed for divorce. A decree of divorce was entered on May 12, 1997. No appeal was taken. On March 5, 1999, Diane filed a petition to set aside the divorce decree on the grounds that she was not served with process within 120 days as required by Ark. R. Civ. P. 4(i).

On March 11, 1999, Daniel filed a response to Diane's petition, and on April 28, 1999, he filed a motion for summary judgment, contending that Diane had entered her appearance in the divorce action when she signed the conditional-reconciliation agreement. Summary judgment was granted to Daniel on July 7, 1999.

The record contains copies of a "Conditional Reconciliation Agreement on Abstinence from Alcoholic Beverages and Illegal Drugs," filed on April 2, 1997; a "Property Settlement Agreement," filed on May 12, 1997; and a "Waiver and Entry of Appearance," filed May 12, 1997.

The conditional-reconciliation agreement is in the form of a legal pleading, styled, "In the Chancery Court of Washington County, Arkansas," bearing the names of Daniel and Diane, identified as "Plaintiff" and "Defendant," respectively, and a docket number. It was signed and dated by Diane on March 6, 1997. Significant portions of the reconciliation agreement state:

> C. As a result of disputes and unhappy differences between the parties, they separated on or about October 11, 1996, and had agreed to an immediate separation.
>
> D. In order to insure the full information and advice of both husband and wife, each has had the opportunity to be represented by independent legal counsel in connection with the negotiations for and drafting of this agreement in consideration of the respective rights, duties and obligations of the parties.
>
> E. This Post-Nuptial Agreement will shortly be filed by Daniel A. Raymond *in the Chancery Court of Washington County, Arkansas, as an attachment to the Complaint for Divorce.*
>
> ...
>
> [T]he parties agree as follows:
>
> ...
>
> 2. Should the wife fail in her program of abstinence and use alcohol during the six month trial reconciliation then *she agrees to accept a divorce* and leave the house with her car, her personal belongings, and $20,000, and will not make claims to any and all real and personal properties, whether marital or nonmarital.
>
> 3. Further, the wife ratifies the previous deeds and transfer of all her right, title and interest, including but not limited to the right of dower and curtesy, if any, in and to certain real and personal property identified as Exhibits B, C, D, and E, and incorporated by reference herein.

Wife agrees to execute any and all documents necessary for transfer of property rights called for should the period of abstinence be breached during the time periods set forth in this agreement, and that this is a ratification of the agreement dated October 24, 1996, marked as Exhibit A, and incorporated by· reference herein.

(Emphasis added.)

The "Property Settlement Agreement," is styled as a legal pleading in the same manner as the conditional-reconciliation agreement, bears the notarized signatures of both Daniel and Diane Raymond, and is dated May 8, 1997. It divided the parties' possessions, including the real property, automobiles, personal effects, bank accounts and investment plans, and debts, and it provided for the execution of documents. It contained the following paragraphs of significance:

(L) *VOLUNTARY AGREEMENT*: This agreement is made and entered into freely and voluntarily by both parties, each having had counsel and advice of his or her own attorney, or having had the opportunity to obtain such advice, and being free from any duress or influence on the part of the other and having full disclosure of the assets and income of the other.

(M) *BINDING EFFECT*: This agreement shall be binding upon the parties and their respective heirs, executors, administrators, and assigns.

WHEREAS, this is the entire and complete agreement that settles any and all matters of real and personal property between the parties.

The "Waiver and Entry of Appearance," also styled as a legal pleading, was signed by Diane and filed May 12, 1997. It provides, *"The undersigned hereby acknowledges receipt of a copy of the property Settlement and Decree of Divorce on May 7, 1997, and hereby waive [sic] my right to appear and consents that the same may be heard and decided without further notice to said undersigned."* (Emphasis added.)

The chancellor granted Daniel's motion for summary judgment and denied Diane's motion to set aside the divorce decree. His order stated:

> This Court specifically finds that Paragraph E of this [Conditional Reconciliation] Agreement stated that, "this post-nuptial agreement will shortly be filed by Daniel A. Raymond in Chancery Court in Washington County, Arkansas as an attachment to the Complaint For Divorce." The Agreement further provided in Paragraph 1 on Page 3 that, "should the program of alcohol rehabilitation be successful and the wife abstains from the use of alcohol for the six month period then the husband agrees to dismiss the pending Divorce Complaint in Washington County Chancery Court." *This Court specifically finds that the Defendant's signature on said Agreement constituted an entry of appearance in this cause and that by signing it the Defendant submitted herself to the jurisdiction of this Court.* (Emphasis added.)

The chancellor's order also stated that Diane's entry of appearance was timely filed within the 120 days specified by Rule 4(i) of the Arkansas Rules of Civil Procedure.

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Ark. R. Civ. P. 52(a); *Blocker v. Blocker*, 57 Ark. App. 218, 944 S.W.2d 551 (1997); *Roberts v. Feltman*, 55 Ark. App. 142, 932 S.W.2d 781 (1996); *Elerson v. Elerson*, 6 Ark. App. 255, 640 S.W.2d 460 (1982). We cannot say that the chancellor's finding is clearly against a preponderance of the evidence.

On appeal, Diane argues that because she was not formally served with summons within 120 days of the filing of the complaint for divorce, the divorce decree entered was void. She contends that the chancellor erred in finding that her signature on the reconciliation agreement constituted an entry of appearance.

Any action of a defendant that amounts to an intention to enter his appearance in court is a voluntary appearance, which may be by formal writing or informal parol action but, in either case, if it is manifestly the intention by the formal writing to enter his appearance, he will be held bound by his act. *Kirk v. Bonner*, 186 Ark. 1063, 57 S.W.2d 802 (1933). In *Robinson v. Bossinger*, 195 Ark. 445, 112 S.W.2d 637 (1938), the court referred to *Spratley v. Louisiana & Arkansas Ry. Co.*, 77 Ark. 412, 95 S.W. 776 (1906), and specifically stated that it was *not overruling* the following statement:

> There is no doubt but that where a party, who has not been served with summons, answers, consents to a continuance, goes to trial, takes an appeal, or does any other substantial act in a cause, such party by such act will be deemed to have entered his appearance. But this rule of practice does not apply in cases where the party on the threshold objects to the jurisdiction of his person, and maintains his objection in every pleading he may thereafter file in the case. Where he thus preserves his protest, he cannot be said to have waived his objection to the jurisdiction of his person.

*Robinson v. Bossinger,* 195 Ark. at 451, 112 S.W.2d at 640. Although these cases were decided long before the Arkansas Rules of Civil Procedure were adopted, the rules do not conflict with this long-standing case law.

We are not unmindful of *Farm Bureau Mut. Ins. Co. v. Campbell,* 315 Ark. 136, 865 S.W.2d 643 (1993), in which our supreme court held that Farm Bureau had not waived its rights and entered its appearance because it had filed an answer. Farm Bureau had filed an answer in the case, but had specifically reserved the objection to the jurisdiction of the person and insufficiency of service of process in its original responsive pleading, its answer. In the case at bar, at no time during the pendency of the divorce action did Diane object to the jurisdiction of the person or court because of insufficiency of service of process, notwithstanding that she knew of its pendency and signed several documents obviously intended as pleadings in the case.

We agree with appellee that it is the law of Arkansas that one's mere knowledge of the pendency of a lawsuit does not validate defective service of process. *Tucker v. Johnson,* 275 Ark. 61, 628 S.W.2d 281 (1982). However, we do not find *Tucker* to be applicable to the case at bar. In *Tucker* the defendant had been served with process by the use of a summons form that was defective. Thereafter, the defendant took no action in the suit, and a default judgment was entered against him. The supreme court set aside the default judgment based on the defective form of the summons.

The dissenting opinion cites *Thompson v. Potlatch Corp.,* 326 Ark. 244, 930 S.W.2d 355 (1996), for the proposition that "a summons is necessary to satisfy due process requirements." This statement is, no doubt, an accurate statement of the law, but its applicability must be considered within the context of the *Thompson*

case. In that case, Thompson's attorney undertook to institute an action against Potlatch in chancery court by merely filing a complaint that contained a certificate of service signed by Thompson's attorney stating that he had hand-delivered a copy of the complaint to Potlatch's attorney. Twenty eight days later, Potlatch filed a motion to dismiss Thompson's complaint for failure to state facts upon which relief could be granted, and Thompson responded with a motion for default judgment, claiming that Potlatch had missed the twenty-day deadline for filing a responsive pleading. The chancellor denied Thompson's motion for default judgment on grounds that no complaint and summons were served on Potlatch or any person authorized to accept service for it.[1]

█ In affirming the chancellor, the supreme court held that a default judgment can not be entered upon defective service of process, stating that "since the appellants failed to issue an appropriate summons, the chancellor was correct in denying their motion to strike and motion for a default judgment." *Thompson*, 326 Ark. at 249, 930 S.W.2d at 358.

Obviously the issue in *Thompson* bears no similarity to the issue in the case at bar. The issue before us is whether the Washington County Chancery Court acquired jurisdiction over the person of Diane Raymond by her voluntary execution of the reconciliation agreement in the divorce case. In *Thompson*, Potlatch did not contend that it had not entered its appearance by filing a motion to dismiss. To the contrary, Potlatch obviously entered its appearance for the purpose of challenging the sufficiency of Thompson's complaint, and it did not question that the court acquired jurisdiction over it. The court obviously deemed itself to have jurisdiction over both Thompson and Potlatch when it heard their motions and entered its order denying Thompson's motion for default judgment. If anything, the *Thompson case* supports the principle that jurisdiction is acquired over a party who voluntarily enters his appearance in an action, even in the absence of service of process.

In the case at bar, Diane took a substantial step in the divorce suit against her by signing the reconciliation agreement, thereby

---

[1] The chancellor also held that the twenty-day deadline for filing responsive pleadings did not apply to foreign corporations doing business in Arkansas, but our supreme court found it unnecessary to consider that issue because of the lack of effective service of process.

delaying any further proceedings in the divorce action pending the attempted reconciliation. Unlike the defendant in *Farm Bureau Mutual Mut. Ins. Co. v. Campbell, supra,* Diane made no attempt to reserve an objection to the court's jurisdiction over her. Having knowingly entered her appearance without reserving her objection to the court's jurisdiction over her, she submitted herself to the jurisdiction of the court. The language in the reconciliation agreement is unequivocal; it was an agreement to delay the pending divorce case while the parties attempted a reconciliation. Unfortunately, the attempt failed, but that fact does not alter the effect of Diane's signature on the document.

Additionally, Diane signed a Waiver and Entry of Appearance, dated May 7, 1997, and it was filed of record on May 12, 1997. This is additional evidence that she was fully cognizant of the divorce action and that it was nearing a judgment. The execution of the Waiver and Entry of Appearance belies any argument on her part that she had not understood or known the purpose of the reconciliation agreement or that it was related to a pending divorce action against her. The documents in the record bearing the signature of Diane clearly establish that she had full knowledge of the pending divorce action, and her argument that she signed those documents without knowing a divorce had been filed is disingenuous.

For the reasons stated, we find the chancellor's action in refusing to set aside the divorce decree entered more than two years earlier was not clearly against the preponderance of the evidence.

Affirmed.

ROBBINS, C.J., STROUD, and NEAL, JJ., agree.

KOONCE and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I respectfully dissent. Rule 4(a) of the Arkansas Rules of Civil Procedure prescribes that upon the filing of a complaint, the clerk "shall forthwith issue a summons and cause it to be delivered for service to a sheriff or to a person appointed by the court or authorized by law to serve process." Rule 4(b) provides that the summons "shall," among other things, "require the defendant to appear, file a pleading, and defend and shall notify him that in case of his failure to do so, judgment by

default may be entered against him for the relief demanded in the complaint." Rule 4(d), pertaining to personal service inside Arkansas, states that a copy of the summons and complaint "shall be served together." Rule 4(g) provides that the person effecting service "shall make proof thereof to the clerk within the time during which the person served must respond to the summons." And Rule 4(i) states:

> If service of the summons is not made upon a defendant within 120 days after the filing of the complaint, the action shall be dismissed as to that defendant without prejudice upon motion *or upon the court's initiative.* If a motion to extend is made within 120 days of the filing of the suit, the time for service may be extended by the court *upon a showing of good cause.*

(Emphasis added.)

Appellee undisputedly failed to effect service within 120 days pursuant to Rule 4(i). No motion was made to extend the time for accomplishing service during the 120-day time period. Rather than endorse this end run of the rule of procedure aimed at protecting the due process rights of defendants to receive fair notice of pending litigation and their obligation to defend, I would reverse the trial court's decision granting summary judgment to appellee and remand so that summary judgment can be entered in favor of appellant to set aside the decree of divorce that was improperly issued. It has long been recognized in Arkansas that service of process requirements, being in derogation of common law rights, must be strictly construed and compliance with them must be exact. *See Carruth v. Design Interiors, Inc.,* 324 Ark. 373, 921 S.W.2d 944 (1996). Our supreme court has held that under ARCP 4(i), dismissal of a case for failure to make service of summons is mandatory. *See Lyons v. Forrest City Machine Works, Inc.,* 301 Ark. 559, 785 S.W.2d 220 (1990). Given this clear line of authority, I do not understand how the chancellor was authorized to enter a divorce decree where the record contains no evidence that summons had been served on appellant within 120 days from the date the complaint was filed.

Our supreme court has held that Rule 4(b) sets out the technical requirements of a summons, and that compliance with those requirements must be exact. *See Thompson v. Potlatch Corp.,* 326 Ark. 244, 930 S.W.2d 355 (1996). Although the appellee relies

upon appellant's signature and receipt of the reconciliation agreement, I find that reliance unsound. After all, the supreme court stated in *Thompson v. Potlatch, supra,* that a certificate of service is no substitute for a summons and that a summons is necessary to satisfy due process requirements.

The appellee argues that laches should prevent the appellant from asserting the divorce decree should be overturned; he also asserts that a decision reversing the chancellor and directing that the divorce decree be set aside would result in bigamatizing him because he remarried after the chancellor entered the divorce decree. That argument is unpersuasive. In the first place, appellant was represented by counsel at all relevant times. He filed for divorce from appellant on December 30, 1996, and knew that he was obligated to serve appellee with summons. He deliberately drafted the "reconciliation agreement" and obtained her signature to it on March 16, 1997, without serving the summons. The 120-day period for completing service ended on April 29, 1997. Although appellee had not moved to dismiss the complaint by May 8, 1997 (when the parties entered into a property settlement agreement), or on May 12, 1997 (when the divorce decree was entered), appellee is fairly charged with the knowledge that his complaint was supposed to be dismissed after April 29, 1997, either on appellee's motion or upon the trial court's initiative. He should be estopped to now argue that he was prejudiced by appellee's failure to challenge his total failure to comply with our due process requirements when he plainly never intended to meet them in the first instance. Reversing and remanding the summary judgment in appellee's favor would certainly complicate his domestic situation, but this is a complication brought on by his own machination.

Beyond that, I do not understand how we can read Rule 4(i) to allow the trial court to enter a decree of divorce in this case where the fact of the appellant's impaired condition was directly before the trial court. I take appellee's reliance on the "reconciliation agreement" and contention that appellant's execution of that agreement constituted a substantial act tantamount to an answer, consent to a continuance, or proceeding to trial, to mean that appellant's chemical dependency was before the trial court. After all, the chemical dependency was why appellee sought a divorce. Thus, I cannot conceive how appellee can be deemed to have clean hands so as to assert the equitable defense of laches when he

deliberately used appellant's impaired condition to deny her right to due process.

In addition, the policy ramifications of this decision are very troubling. If receipt of a "reconciliation agreement" after a divorce complaint has been filed but before summons has been served is an exception to the requirement that summons be served in order for a lawsuit to proceed, does that mean that mere receipt of the "reconciliation agreement" waives the defendant spouse's right to object to the jurisdiction of the chancery court? Is our decision applicable outside the context of divorce proceedings? Does our decision mean that a trial judge now has no duty *"upon the court's initiative"* to dismiss, without prejudice, an action where summons is not served upon a defendant within 120 days after the complaint is filed despite the plain language of a rule prescribed by our supreme court to that effect? If due process requires that summons be served upon a defendant and Rule 4(i) prescribes that failure to serve that summons within 120 days mandates that *"the action shall be dismissed as to that defendant…,"* how is due process satisfied where summons is not served and the action is not dismissed?

The result reached today has far-reaching and profoundly troublesome implications. I do not think it is judicially sound, fair, or wise. Therefore, I respectfully dissent. Judge KOONCE has authorized me to state that he joins this opinion.