TOBACCO SUPERSTORE, INC. *v.*
Diane DARROUGH

04-1329 207 S.W.3d 511

Supreme Court of Arkansas
Opinion delivered April 28, 2005

*Bridges, Young, Matthews & Drake, PLC*, by: *John C. Talbot*; and *The Kullman Law Firm*, by: *Henry P. Julien, Jr.* and *Robert P. Lombardi*, for appellant.

*Hunt & Harris Law Firm*, by: *Eugene Hunt* and *Sandra Y. Harris*, for appellee.

TOM GLAZE, Justice. Although this appeal was originally filed in the court of appeals, we assumed jurisdiction of the case as it involves questions that arise under the power of the supreme court to regulate the practice of law. *See* Ark. Sup. Ct. R. 1-2(a)(5).

On May 9, 2003, appellee Diane Darrough filed an employment discrimination lawsuit against appellant Tobacco Superstore, Inc. ("TSS"), an Arkansas corporation that sells tobacco products in Arkansas, Tennessee, Mississippi, and Missouri. TSS filed its answer on June 16, 2003, after obtaining an extension of time to do so. TSS's attorneys, David Jaqua and Todd Photopulos, are licensed to practice in Tennessee. On the same day TSS's answer was filed, both Jaqua and Photopulos filed a motion for admission *pro hac vice*. On July 7, 2003, Darrough filed an objection to Jaqua and Photopulos's motion for admission *pro hac vice*, contending that

the lawyers had failed to associate an Arkansas lawyer as local counsel. On August 6, 2003, Darrough filed her first amended complaint, this time contending that her cause should be certified as a class action. TSS, through its attorneys Jaqua and Photopulos, answered on August 22, 2003.

On February 24, 2004, the trial court entered an order setting TSS's attorneys' motion for admission *pro hac vice* for a hearing on April 5, 2004. On April 5, 2004, Arkansas attorney John Talbot entered his appearance as local counsel on behalf of TSS. At the hearing that day, the trial court denied the Tennessee attorneys' motion for admission *pro hac vice*, finding that their motion failed to comply with Rule XIV, because neither the motion nor their supporting affidavits mentioned whether a Tennessee court would allow Arkansas attorneys to appear by comity. The order denying admission was entered on April 8, 2004.

On May 11, 2004, Darrough filed a motion for default judgment and to have her requests for admission declared admitted. In her motion, she alleged that TSS had been properly served with process, but had failed to file a timely answer; in addition, Darrough contended that TSS had failed to answer her requests for admission in the time and manner provided by law. In her brief in support of her motion, she argued that, because TSS's Tennessee attorneys had not been admitted to practice in Arkansas at the time they filed TSS's answer to Darrough's complaint, TSS's answer was a nullity; likewise, "no one authorized to practice law in Arkansas" had answered Darrough's requests for admission with the time allotted, and therefore those requests should be deemed admitted.

In response, TSS argued that, because Darrough had "treated David Jaqua and Todd Photopulos as [TSS's] attorneys by submitting discovery requests to them and serving pleadings on them," Darrough should be estopped from seeking a default judgment and having her request for admissions deemed admitted. In addition, TSS argued that a default judgment would be improper in any event, because Darrough's original complaint was superseded by her amended complaint, which neither adopted nor incorporated her original complaint. Thus, TSS contended, Darrough's original complaint was a nullity, and a default judgment could not be based on that complaint. TSS further urged that Darrough did not serve her first amended complaint in compliance with Ark. R. Civ. P. 5(a), and a default judgment could not be based on an improperly served complaint. TSS also filed a motion

to dismiss Darrough's first amended complaint, reiterating its argument that the amended complaint, which neither adopted nor incorporated the original complaint, was not properly served. On July 30, 2004, TSS also filed a "supplemental response to motion for default judgment," in which it further contended that the court could not grant Darrough's motion for default judgment, because her complaint failed to state facts sufficient to constitute a cause of action.

The trial court entered an order on August 30, 2004, granting Darrough's motion for default judgment with respect to her original complaint. In the order, the court noted that neither Jaqua nor Photopulos had been properly admitted to practice law in Arkansas; therefore, the answer filed by those attorneys on behalf of TSS was a nullity and should be stricken from the record. However, the court denied Darrough's motion for default judgment with respect to her first amended (class-action) complaint. Finally, the order denied TSS's motion to dismiss the complaint and first amended complaint.

TSS has appealed from this order, and in its first point on appeal, it argues that the trial court erred in denying the motion for admission to practice *pro hac vice* filed by Tennessee attorneys Jaqua and Photopulos. A trial court's ruling on an attorney's motion for admission to practice *pro hac vice* is reviewed under an abuse of discretion standard. *See Preston v. University of Arkansas for Medical Sciences*, 354 Ark. 666, 128 S.W.3d 430 (2003). The admission of attorneys to practice *pro hac vice* is governed by Rule XIV of the Rules Governing Admission to the Bar. That Rule provides, in pertinent part, as follows:

> A lawyer residing outside the State of Arkansas who has been admitted to practice law in the Supreme Court of the United States or in the United States Court of Appeals for the circuit in which the attorney resides or in the Supreme Court or the highest appellate court of the state of the attorney's residence, and who is in good standing in the court of the attorney's admission, will be permitted by comity and by courtesy to appear, file pleadings and conduct the trial of cases in all courts of the State of Arkansas. However, any trial court may require such nonresident attorney to associate a lawyer residing and admitted to practice in the State of Arkansas upon whom notices may be served and may also require that the Arkansas lawyer associated be responsible to the court in which the case is

pending for the progress of the case, insofar as the interest represented by the Arkansas lawyer and the nonresident lawyer is concerned.

Unless the State in which the . . . nonresident lawyer resides likewise accords similar comity and courtesy to Arkansas lawyers who may desire to appear and conduct cases in the courts of that State, this privilege will not be extended to such nonresident lawyer.

A nonresident lawyer will not be permitted to engage in any case in an Arkansas court unless a written statement is filed with the court in which the nonresident lawyer submits to all disciplinary procedures applicable to Arkansas lawyers.

In the present case, Tennessee attorneys Jaqua and Photopulos filed a motion for admission *pro hac vice* in which they named the law schools they had attended, the bars to which each had been admitted to practice, and the following three statements: 1) movants are members in good standing of all bars of which movants are members; the movants are not under suspension or disbarment from any bar; 2) movants do not reside in Arkansas, are not regularly employed in Arkansas, and are not regularly engaged in the practice of law in Arkansas; and 3) movants submit to all disciplinary procedures applicable to Arkansas lawyers.

TSS first asserts that Jaqua and Photopulos established all the necessary facts for admission *pro hac vice* by filing a verified motion for admission that specified that they were admitted to the Tennessee supreme court, were in good standing in Tennessee and were not residents of Arkansas, and had submitted themselves to all disciplinary procedures applicable to Arkansas lawyers. In addition, TSS points out that Darrough limited her motion by objecting to Jaqua and Photopulos's admission only on the grounds that TSS had failed to associate local counsel.

At the hearing on the Tennessee attorneys' motion for admission, Darrough conceded that the requirement of associating local counsel was a matter of the trial court's discretion, but she raised a new and different objection — that the motion was facially defective because neither Jaqua nor Photopulos had mentioned whether Tennessee affords comity to Arkansas lawyers who wish to practice in that state. Darrough had not previously advanced this ground in her written objection. Despite Darrough's failure to alert TSS that she would be raising this argument until only three days prior to the hearing, TSS's Arkansas attorney, John Talbot,

offered the court a copy of Tennessee Supreme Court Rule 19, which is essentially identical to Arkansas' Rule XIV in all respects, and which permits lawyers who are nonresidents of Tennessee to practice in that state's courts. Nonetheless, the trial court refused to consider the Tennessee rule, declaring that, because the proffered copy of the rule was not a certified copy and was not accompanied by an affidavit, the court "did not know" what it was. TSS argues that its proffer of the Tennessee rule satisfied the one remaining requirement of Rule XIV. In other words, the Tennessee attorneys' proffer of the Tennessee comity rule, in addition to the averments previously made in their written motion, fully complied with the information required under Arkansas' Rule XIV so as to permit them, as nonresident attorneys, to practice in Arkansas.

Darrough, on the other hand, contends that the Tennessee lawyers' motion was defective *ab initio*, and that they never attempted to amend the motion or cure it before it was denied by the trial court. In support of her argument, she relies on two cases, *Preston, supra*; and *Willett v. State*, 334 Ark. 40, 970 S.W.2d 804 (1998). Both of these cases are easily and significantly distinguishable from the case at bar.

In *Preston*, the plaintiff, Preston, hired attorneys from Oklahoma to file a medical malpractice suit against a number of doctors on November 19, 2001. In July of 2002, the doctors filed a motion to strike Preston's complaint, arguing that Preston's Oklahoma attorneys had never filed a motion for admission *pro hac vice*, and there was no local counsel involved. The Oklahoma attorneys filed a motion for admission *pro hac vice* on July 25, 2002. The trial court held a hearing on the issue on September 27, 2002, at which time the Oklahoma attorneys pointed out that Oklahoma allows Arkansas lawyers to practice by comity. On October 3, 2003, the trial court denied the attorneys' motion for admission, and also dismissed Preston's complaint with prejudice on the ground that his lawyers were not licensed to practice in Arkansas. *Preston*, 354 Ark. at 672.

On appeal, Preston argued that the trial court erred in denying his attorneys' motion for admission *pro hac vice*. This court held that the trial court did not abuse its discretion in denying the attorneys' motion for admission, pointing out that the Oklahoma lawyers' motion was filed some eight months after the complaint had already been filed. The court noted that "[t]he clear intent of Rule XIV is that the written statement be submitted *before* the

attorneys engage in the practice of law in Arkansas." *Preston*, 354 Ark. at 676 (emphasis in original). In addition, this court pointed out that, even when the Oklahoma attorneys *did* file their motion, they failed to spell out Oklahoma's comity rule regarding Arkansas lawyers. The court noted that Preston had had two years to find Arkansas counsel to represent him, or to have his Oklahoma attorneys file a motion for admission to practice *pro hac vice* in Arkansas *before* filing the complaint. Thus, the *Preston* court concluded, the trial court did not abuse its discretion in denying the Oklahoma attorneys' motion for admission. *Id.* at 677.

As already stated above, *Preston* is factually distinguishable from this case. First, the lawyers in *Preston* were hired to file a *complaint* — as the court noted, the Oklahoma attorneys had *two years* to file their motion to practice *pro hac vice*, but they were derelict by failing to do so. Here, by way of contrast, the Tennessee lawyers were retained to file an *answer*, which meant that, instead of two years, they had only *twenty days* after the service of the complaint in which to comply with Arkansas' *pro hac vice* requirement. Second, the *Preston* lawyers did not file their *pro hac vice* motion until eight months after the complaint was filed; here, Jaqua and Photopulos *filed their written motion for admission contemporaneously with the answer they filed on behalf of TSS.* And finally, in *Preston*, the local counsel apparently made only an oral representation to the trial court at the hearing on the motion regarding Oklahoma's comity rules, while in the present case, local counsel proffered a copy of the actual Tennessee rule. Admittedly, it was not a certified copy, but Darrough cites to no authority that requires a certified copy of another state court's published rules be introduced in order to support a claim that the other state (here, Tennessee) affords Arkansas lawyers comity.

The other case on which Darrough relies, *Willett v. State*, *supra*, is also distinguishable. In *Willett*, Professor Thomas Sullivan filed a motion with this court seeking permission to participate in oral arguments on behalf of appellant Alan Willett.[1] Sullivan, an instructor at the University of Arkansas at Little Rock School of Law, was licensed to practice law in Texas. In his motion for admission, Sullivan recited that he was an attorney in good standing in Texas; the motion also incorporated an affidavit from

---

[1] Darrough incorrectly asserts that the *Willett* case involved the appeal of a trial court's decision to deny the motion.

Sullivan and a certificate of good standing from the State Bar of Texas. Sullivan's affidavit outlined his legal experience, stated that he taught at the law school, recited his familiarity with the this court's rules, and stated his willingness to be bound by this court's disciplinary rules. However, neither the motion nor the affidavit mentioned Rule XIV. *Willett*, 334 Ark. at 41. In declining to admit Sullivan to practice, the court wrote the following:

> The motion to admit Mr. Sullivan is denied because it is deficient in two respects. First, the rule permits the admission *pro hac vice* of nonresident attorneys licensed in states that grant comity to Arkansas attorneys, but neither the motion nor the affidavit mentions whether Texas courts would allow Arkansas attorneys to appear by comity in an instance similar to this one. Second, [Mr. Sullivan's] motion and affidavit do not state that [he] is "[a] lawyer residing outside the State of Arkansas," and that is [Rule XIV's] initial requirement. Mr. Sullivan's statement that he is a teacher at the UALR School of Law suggests that he resides in this State.

> The reason that attorneys seeking to be admitted *pro hac vice*, based upon comity, must be nonresidents is to prevent attorneys who are not licensed in Arkansas from practicing law here *ad hoc*. If residents licensed elsewhere were permitted to practice in that manner, the exception could easily swallow the rule.

*Willett*, 334 Ark. at 42–43.

Again, the facts of *Willett* are distinguishable. In addition to the fact that Sullivan was a resident of Arkansas, he never made any mention whatsoever of whether Texas courts allow Arkansas lawyers to practice by comity. Here, on the other hand, the Tennessee lawyers cited Tennessee's Rule 19 and provided the court with a copy that clearly reflected that state's comity rule, but Darrough offered nothing in response.

For the foregoing reasons, we must conclude that the trial court abused its discretion in denying the Tennessee attorneys' motion for admission *pro hac vice*. The lawyers were not put on notice that they would be challenged on the basis of Tennessee's comity rule until the Friday before a hearing scheduled for Monday, yet even so, they still addressed and met that issue on relatively short notice at the court's scheduled hearing (the hearing was held on a Monday, and local counsel had only been associated on the previous Friday afternoon). As previously pointed out, the

Tennessee attorneys filed their written motion for admission contemporaneously with TSS's answer, and they promptly supplemented their motion with the Tennessee comity rule that established the one requirement omitted from the written motion. In sum, attorneys Jaqua and Photopulos substantially complied with Rule XIV when they filed their written motion, and they timely cured the only remaining defect at the hearing. In other words, there simply was no good reason to deny Jaqua and Photopulos's motion, as they had complied with every requirement of Rule XIV. Because the trial court held to the contrary, we conclude that the trial court abused its discretion by denying the Tennessee attorneys' motion for admission to practice *pro hac vice*.

█ In TSS's second point on appeal, it argues that the trial court improperly granted Darrough's motion for default judgment on her original complaint.[2] The standard of review for granting or denying a motion to vacate a default judgment is whether the trial court abused its discretion. *See, e.g., B&F Engineering, Inc. v. Cotroneo*, 309 Ark. 175, 830 S.W.2d 835 (1992). Here, the trial court granted Darrough a default judgment on her original complaint based on the court's erroneous conclusion that TSS's attorneys were not properly admitted to practice law in Arkansas. In so concluding, the court struck the answer, finding that it was a nullity; without the answer, Darrough was entitled to a default judgment.

█ Because we have concluded that the trial court abused its discretion in denying the motion for admission to practice *pro hac vice*, we must also reverse the court's decision to strike the answer and grant the default judgment. We agree with TSS that the trial court abused its discretion in granting Darrough's motion for default judgment on the original complaint.[3]

---

[2] The trial court granted Darrough's motion for default judgment on the original complaint, but denied it with respect to the first amended, class action complaint.

[3] TSS raises three alternate arguments for reversal of the trial court's granting of Darrough's default judgment motion on the original complaint: the default judgment was improperly entered on a complaint that had been superseded by the amended complaint; default judgment was inappropriate because Darrough's original complaint failed to state sufficient facts to support a cause of action; and, because Darrough delayed seeking the default judgment, and behaved as though Jaqua and Photopulos were TSS's attorneys of record in the interim, the doctrines of waiver, laches, and equitable estoppel should have

■ Based on the same rationale, TSS further contends that the trial court erred in granting Darrough's request to have her requests for admission deemed admitted. The trial court ruled that Darrough's first and second requests for admissions, to which the Tennessee attorneys responded, were deemed admitted, because those attorneys responding to Darrough's requests had not been properly admitted to practice law in Arkansas. The trial court was in error, and, as with the arguments above regarding the default judgment, the trial court's ruling in this respect must be reversed, because the legal underpinning of the ruling was erroneous.[4]

In TSS's next point on appeal, it argues that the trial court should have dismissed Darrough's first amended complaint for failure to properly serve process on TSS. The basis for TSS's contention is that, at the time Darrough filed her amended complaint, the trial court had already ruled that TSS had defaulted on Darrough's original complaint, for the reasons related to the *pro hac vice* issue discussed above. Regarding her amended complaint, however, Darrough served that complaint on TSS by sending it via regular mail to Tennessee attorney Jaqua on August 4, 2003. Rule 5(a) of the Arkansas Rules of Civil Procedure provides in pertinent part as follows:

> No service need be made upon parties in default for failure to appear, *except that pleadings asserting new or additional claims for relief against them shall be served in the manner provided for service of summons in Rule 4.*

(Emphasis added.) The amended complaint asserted new or additional claims for relief, in the form of Darrough's assertion that the matter should be certified as a class action. Given these new claims for relief, service should have been had in accordance with Rule 4.

■■ Rule 4, in turn, provides that service shall be had upon a corporation "by delivering a copy of the summons and complaint to an officer, partner other than a limited partner,

---

precluded the trial court from entering the default judgment. However, because we reverse on the grounds described above, we need not reach or address these arguments.

[4] TSS again raises an alternative argument, suggesting that the trial court erred in deeming the requests for admission to be admitted because they were not properly served. However, as with TSS's additional points on appeal pertaining to the default judgment, we need not address or consider the arguments.

managing or general agent, or any agent authorized by appointment or by law to receive service of summons." Ark. R. Civ. P. 4(d)(5) (2004). In *Thompson v. Potlatch Corp.*, 326 Ark. 244, 930 S.W.2d 355 (1996), this court held that a "certificate of service, such as the one used in this case, *is no substitute for a summons. A summons is necessary to satisfy due process requirements.*" *Thompson*, 326 Ark. at 249 (affirming trial court's denial of motion for default judgment, because the complaint upon which default judgment was sought had not been properly served in accordance with Rule 4) (emphasis added). In addition, the *Thompson* court held that Rule 4(b) "sets out the technical requirements of a summons, and compliance with those requirements must be exact." *Id.* (citing *Carruth v. Design Interiors, Inc.*, 324 Ark. 373, 921 S.W.2d 944 (1996)).

 Arkansas law is long settled that service of valid process is necessary to give a court jurisdiction over a defendant. *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 120 S.W.3d 525 (2003); *Raymond v. Raymond*, 343 Ark. 480, 36 S.W.3d 733 (2001). Our case law is equally well-settled that statutory service requirements, being in derogation of common law rights, must be strictly construed and compliance with them must be exact. *Id.*; *Carruth, supra*. This court has held that the same reasoning applies to service requirements imposed by court rules. *Id.* More particularly, the technical requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly and compliance with them must be exact. *Id.*; *Thompson, supra*.

 Pursuant to Rule 4(i) of the Rules of Civil Procedure, it is also mandatory for the trial court to dismiss the action without prejudice if service is not made within 120 days of the filing of the complaint and no motion to extend is timely made. Ark. R. Civ. P. 4(i); *Smith, supra; Lyons v. Forrest City Machine Works, Inc.*, 301 Ark. 559, 785 S.W.2d 220 (1990). The court in *Smith* held that the trial court properly dismissed Smith's complaint when it was undisputed that the summonses were deficient under Rule 4(b).

 Here, the trial court specifically found that the amended complaint had not been served in compliance with Rule 4. This conclusion was correct, because Darrough had merely mailed a copy of the first amended complaint to TSS's Tennessee attorney, despite the fact that the amended complaint raised new claims for relief, and TSS had been deemed to be in default on the

original complaint. *See* Ark. R. Civ. P. 5(a). However, as just noted, Rule 4 demands strict compliance. Because Darrough never properly served her amended complaint on TSS in accordance with Rule 4, we therefore hold that the trial court erred in denying TSS's motion to dismiss the amended complaint.

BROWN, J., not participating.