

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-17

| | |
|---|---|
| JEFFREY SCOTT CRISWELL<br>APPELLANT | **Opinion Delivered** MAY 14, 2014 |
| V. | APPEAL FROM THE POINSETT COUNTY CIRCUIT COURT [NO. CR-08-99] |
| OFFICE OF CHILD SUPPORT ENFORCEMENT and ASHLEY CRISWELL (NOW STRANGE)<br>APPELLEES | HONORABLE DAVID N. LASER, JUDGE |
| | REVERSED |

## KENNETH S. HIXSON, Judge

The parties to this appeal are appellant Jeffrey Scott Criswell and appellee Ashley Criswell (now Strange). The parties married in June 2004, and on March 18, 2010, the trial court entered a divorce decree awarding Ashley custody of the parties' four minor children subject to Jeffrey's standard visitation. The decree also ordered Jeffrey to pay $250 per week in child support. On June 7, 2013, Jeffrey filed a motion to dismiss and set aside the divorce decree, as well as all subsequent orders enforcing the decree, on the grounds that the 2010 divorce decree was entered without personal jurisdiction. The trial court entered an order denying Jeffrey's motion to dismiss, and Jeffrey now appeals. Because we agree that the trial court lacked jurisdiction to enter the divorce decree and that the decree was therefore void *ab initio*, we reverse the trial court's order denying Jeffrey's motion to dismiss.

SLIP OPINION

The record shows that, in anticipation of divorce, the parties entered into a "child-custody agreement" on April 14, 2008. That agreement contained the following pertinent provisions:

> The parties have filed or will file suit for divorce in the above styled cause of action, and because the parties wish to resolve the issues of the divorce action pending between them, they enter into and bind themselves to the following agreement. The parties have four minor children, all daughters. . . . The parties agree that Plaintiff (Ashley) shall have custody of the children, with the Defendant (Jeffrey) having visitation rights as set forth in the Revised Minimum Chancery Court Visitation Schedule. The parties agree that Defendant will pay $250.00 per week in child support to be paid through the Circuit Clerk's Office. . . . Both parties agree that this agreement will be incorporated into their final divorce decree, and be part of this Court's order. . . . Both of the parties have executed this agreement as their free and voluntary act and deed and agree that a divorce may be entered in this action.

Three days after the agreement was signed by Jeffrey, on April 17, 2008, Ashley filed a complaint for divorce on the grounds of general indignities. On the same day, the parties' executed child-custody agreement was also filed with the trial court. However, no summons was ever issued by the court clerk, and the complaint for divorce was never served on Jeffrey.

The next activity in the case came almost two years later on March 18, 2010, when the trial court entered a divorce decree. The decree provided that, based on the oral testimony of Ashley and her corroborating witness, Ashley was entitled to a divorce on the grounds of general indignities. The decree incorporated the parties' child-custody agreement, thereby awarding custody of the children to Ashley and ordering Jeffrey to pay $250 in weekly child support.

The record reflects that Jeffrey sporadically made some child-support payments to Ashley. On August 5, 2011, appellee Office of Child Support Enforcement (OCSE) filed a

SLIP OPINION

motion to intervene and a motion for citation for contempt, alleging that Jeffrey had accrued a substantial arrearage on his court-ordered child-support obligation. On August 11, 2011, the trial court entered an order finding that Ashley had assigned her rights to OCSE, granted OCSE's motion to intervene, and entered an order for Jeffrey to appear and show cause why he should not be held in contempt for violation of the March 18, 2010 divorce decree.

What happened next was a series of hearings, motions, and orders pertaining to OCSE's contempt allegations and collection efforts. Jeffrey appeared at each of these hearings pro se. The trial court entered an order on November 17, 2011, finding that Jeffrey was $37,350 in arrears on his child-support obligation and awarding OCSE a judgment in that amount. On February 16, 2012, the trial court entered an order finding Jeffrey in contempt and sentencing him to thirty days in jail, but suspended the imposition of sentence and found that he could purge himself of the contempt by paying $5000 by April 12, 2012. On April 12, 2012, the trial court entered another order of contempt against Jeffrey, again sentencing him to thirty days in jail but stating that Jeffrey could purge himself by paying $5000. On May 13, 2013, the trial court entered an order finding Jeffrey in contempt for nonpayment of child support, and finding a total delinquency of $53,160 for which OCSE was awarded a judgment. That order noted that at the hearing Jeffrey had requested a review and adjustment of his child-support obligation.

At some point after the trial court entered the $53,160 judgment, Jeffrey retained counsel. On June 7, 2012, the newly retained counsel filed a motion to dismiss. In his motion, Jeffrey argued that because a summons was never issued upon the filing of the divorce

SLIP OPINION

complaint, and neither the complaint nor a summons was served on him, the divorce decree

and all subsequent orders should be dismissed. Jeffrey contended in his motion that because

there was no personal jurisdiction over him, the divorce decree was void and should be set

aside. Both Ashley and OCSE filed responses opposing Jeffrey's motion to dismiss.

After a hearing, the trial court entered an order denying Jeffrey's motion to dismiss on

October 30, 2013. The trial court's order recites:

1. That this Court has jurisdiction of the parties and the subject matter and the venue is proper.

2. The Defendant filed a Motion to Dismiss for lack of personal jurisdiction on June 7, 2013, asking the Court to set aside the parties' Divorce Decree and all its subsequent Orders that were filed by the Intervenor, State of Arkansas Office of Child Support Enforcement.

3. The Court has to look and see if the Court acquired subject matter and personal jurisdiction over the Defendant. The Court hereby finds that there is no question that subject matter jurisdiction exists.

4. *The Court has no evidence that a Summons was ever issued in the divorce matter. Also, the Court is aware that there was not a Waiver or Entry of Appearance that was signed by the Defendant in the divorce matter. However, the Court finds that the Defendant did sign a Child Custody Agreement on April 14, 2008 and it was filed on April 17, 2008. The divorce was taken two years later and the Divorce Decree was filed on March 18, 2010. The Court finds that the Defendant subjected himself to the jurisdiction of this Court by signing and filing the Child Custody Agreement acknowledging that it was in contemplation of a divorce, agreeing to matters of child custody and visitation and naming the children. The Court also takes in consideration that subsequent to the Divorce Decree being entered, two children were born to the Plaintiff, Ashley Criswell (now Strange), and her new husband.*

5. The Court finds that the divorce matter is an equitable proceeding and the Defendant is not entitled to have the Child Custody Agreement taken back. *In reference to whether this Court had personal jurisdiction over the Defendant at the time the Divorce Decree was entered, it is the finding of this Court that the actions of the Defendant, Jeffrey Criswell, by signing the Child Custody Agreement constitute acquisition of personal jurisdiction over him.*

6. The Court also finds that after the divorce Decree was entered, the OCSE intervened and re-opened the case on August 5, 2011. Each and every Court order after that gave rise to judgments against the Defendant. Mr. Criswell was served with an Order to Appear and Show Cause and there is a green card

4

supporting that. However, no Summons was issued. The Defendant never filed a responsive pleading and the Defendant appeared without counsel. There was a continuance granted at the request of the parties. The Defendant asked for an adjustment in child support. In other words, he was heard on affirmative requests in connection with those child support hearings. The Defendant had paid support and presumably exercised visitation until sometime around 2013 when this Motion was filed.

7. *Whether pleadings were filed or not, the Court finds that the involvement of the Defendant, Mr. Criswell, in this child support case, showed up in Court, was heard, and availed himself to the jurisdiction of the Court. The Defendant's actions were affirmative and sufficient to constitute acquisition of personal jurisdiction over him.*

8. *The Court finds that the matter as a whole (the divorce action and subsequent child support actions) indicates personal jurisdiction over the Defendant both prior to the entry of the Divorce Decree and everything that follows therefrom.* The Divorce Decree and the judgments and orders entered afterwards in this case stand.

9. The Defendant, Jeffrey Criswell's Motion to Dismiss is denied.

(Emphasis added.)

In this appeal from the order denying his motion to dismiss, Jeffrey argues that the trial court erred in failing to grant the motion because the trial court lacked jurisdiction to enter the March 18, 2010 divorce decree. Jeffrey argues that, because the divorce decree was entered without jurisdiction, the decree should have been set aside and that the attempts to enforce it were void. We agree.

In this case it is undisputed that after Ashley filed her complaint for divorce, no summons was issued and there was no service of the complaint on Jeffrey. It is mandatory under Arkansas law that service of process must be made within 120 days after the filing of the complaint unless there is a motion to extend, and if service is not obtained within the 120-day period and no such motion is made, dismissal is required upon motion or upon the court's own initiative. Ark. R. Civ. P. 4(i). Arkansas law is long settled that service of valid process is necessary to give a court jurisdiction over a defendant. *Tucker v. Johnson*, 275 Ark.

61, 628 S.W.2d 281 (1982). Moreover, a summons is required to satisfy due-process requirements. *Thompson v. Potlach Corp.*, 326 Ark. 244, 930 S.W.2d 355 (1996). In *Carruth v. Design Interiors, Inc.*, 324 Ark. 373, 921 S.W.2d 944 (1996), the supreme court held that proceedings conducted without valid service render judgments arising from them void *ab initio*. Moreover, actual notice of a proceeding does not validate defective process. *Tucker, supra*.

Our supreme court's decision in *Raymond v. Raymond*, 343 Ark. 480, 36 S.W.3d 733 (2001), provides considerable guidance in resolving the appeal at hand. In *Raymond*, husband filed a divorce complaint, but wife was never served with process or a copy of the complaint. Ninety-three days after the complaint had been filed, both parties signed a "conditional reconciliation agreement" that was filed with the court. The conditional-reconciliation agreement was in the form of a legal document prepared for court filing, and it contained the name of the court, the style of the case, and the docket number. The conditional-reconciliation agreement provided that the parties were pursuing a trial reconciliation, and that wife would not partake in alcohol or illegal drugs and would undergo counseling and treatment. The agreement itself clearly stated that it was to be filed as an attachment to the complaint for divorce in the Chancery Court of Washington County, Arkansas. The agreement further provided that, if wife successfully completed an alcohol-rehabilitation program and abstained from alcohol for a period of six months, husband would dismiss the pending divorce complaint in the Washington County Chancery Court.

The reconciliation efforts failed. Thereafter, the divorce proceeded, and the wife subsequently executed a property-settlement agreement and another agreement labeled a "waiver and entry of appearance." Although this agreement was labeled as a "waiver and entry of appearance," the contents of the agreement in fact did not waive service of process, nor did it acknowledge receipt of husband's divorce complaint. Rather, the waiver-and-entry-of-appearance agreement simply acknowledged receipt of the parties' property-settlement agreement and reflected wife's waiver of the right to appear without further notice. The property-settlement agreement and the waiver and entry of appearance were filed with the divorce decree 133 days after husband had filed his complaint.

The wife in *Raymond* later obtained counsel, and almost two years after the divorce decree and property-settlement agreement had been entered, she petitioned to have the decree set aside. The wife contended that the trial court had not acquired jurisdiction to enter the decree because husband had never perfected service of process, nor did he deliver to wife a copy of the complaint. The husband disagreed, arguing *inter alia* that the wife submitted to the court's jurisdiction by virtue of her signature on the conditional-reconciliation agreement that was filed with the court. The trial court denied wife's petition, finding that her signature on the parties' conditional reconciliation agreement constituted an entry of appearance, and that by signing it, she submitted herself to the court's jurisdiction.

The wife appealed the case to the Arkansas Supreme Court. Our supreme court in *Raymond* reversed the trial court, holding that the divorce decree was void because wife had undisputedly never been served with a copy of the complaint or the summons. The supreme

7

court further held that, by signing the conditional-reconciliation agreement, wife did not enter an appearance or waive lack of jurisdiction as a defense.

In the instant case, Ashley contends that, even though there was no valid service on Jeffrey, he nonetheless entered his appearance and subjected himself to the trial court's jurisdiction by signing the child-custody agreement. However, we disagree. The child-custody agreement was executed three days before the complaint for divorce was filed, so at that time there was not yet any action to appear in. Moreover, as in *Raymond*, *supra*, Jeffrey never filed any pleading or otherwise appeared before the divorce decree was entered. And, as in *Raymond*, Jeffrey's actual knowledge of the proceedings did not validate the defective process. Therefore, the divorce decree in this case was entered without jurisdiction and was void.

Ashley also asserts that Jeffrey's motion to dismiss was properly denied because Jeffrey's jurisdictional claim was barred under the doctrines of laches and judicial estoppel. Ashley asserts that Jeffrey waited until more than three years after the divorce to challenge the court's jurisdiction, and that in reliance on the divorce decree she has since remarried and has two more children. Ashley also relies on *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004), where the supreme court held, under the doctrine of judicial estoppel, that a party is not allowed to avail himself of inconsistent positions in litigation concerning the same subject matter. Ashley contends that Jeffrey took inconsistent positions because, prior to filing his motion to dismiss for lack of jurisdiction, he participated in the contempt proceedings and requested affirmative relief including a continuance and an adjustment in child support.

The laches argument now raised by Ashley was also raised and rejected by our supreme court in *Raymond, supra.* In *Raymond*, the supreme court held that the laches defense was misplaced because the decree was void *ab initio,* and the trial court had no jurisdiction or authority to hear the case in the first place. The same is true in this appeal. Moreover, the equitable defense of judicial estoppel does not apply here because Jeffrey never appeared or took any inconsistent position *prior* to the divorce decree being entered. Therefore, his voluntary participation in the subsequent contempt proceedings could not revive a divorce decree that was already void. Proceedings where attempted service was invalid render judgments arising therefrom void *ab initio* and subject to collateral attack at any time. *Raymond, supra.* Jeffrey was thus entitled to challenge the divorce decree at the time and in the manner that he did, even though he had participated in the proceedings in which the trial court attempted to enforce the void decree.

We conclude that the trial court lacked jurisdiction to enter the divorce decree. As such, the decree was void, and the decree, as well as the subsequent proceedings to enforce the decree, should have been dismissed and set aside.

Reversed.

GLADWIN, C.J., and GLOVER, J., agree.

*Chet Dunlap*, for appellant.

*Lewis Law Firm*, by: *Nathan D. Lewis*; and
*Law Offices of Mark Rees*, by: *Mark W. Rees*, for appellee Ashley Criswell Strange.