SLIP OPINION      Cite as 2015 Ark. App. 668



# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–1092

| | |
|---|---|
| JULISSA MENDEZ TANNER<br>APPELLANT | **Opinion Delivered** NOVEMBER 18, 2015 |
| V. | APPEAL FROM THE CLEVELAND COUNTY CIRCUIT COURT [NO. DR–13–37–1] |
| RICHARD LLOYD TANNER<br>APPELLEE | HONORABLE HAMILTON H. SINGLETON, JUDGE |
| | AFFIRMED |

## DAVID M. GLOVER, Judge

Julissa and Richard Tanner were divorced by decree entered on May 20, 2014. The trial court awarded custody of their three minor children to Richard and ordered one weekend a month of supervised visitation to Julissa. Julissa appeals, challenging the trial court's decisions regarding supervised visitation, an evidentiary ruling, and calculation of child support. We affirm.

In reviewing cases of this nature, we consider the evidence de novo but will not reverse a trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Williams v. Geren*, 2015 Ark. App. 197, 458 S.W.3d 759. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Contreras v. Arkansas Dep't. of Human Servs.*, 2014 Ark. 51, 431 S.W.3d 297.

We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Williams, supra.*

The parties have three daughters—J.T., born March 16, 2007; R.T., born February 26, 2009; and R.T., born April 7, 1999. Julissa is the biological mother of all three. Richard is the biological father of J.T. and R.T., and he adopted the oldest, R.T., while the parties were married. Julissa does not challenge the trial court's award of custody to Richard, but as her first point of appeal, she does challenge the manner in which the trial court structured her visitation with the children—one weekend per month, to be exercised on a Saturday and Sunday from 8:00 a.m. to 8:00 p.m., with supervision and with not less than thirty days' notice.

In its letter opinion, which was incorporated into the parties' divorce decree, the trial court made the following findings of fact with respect to visitation:

1.) After [Julissa] separated from [Richard] and moved out of the marital residence, leaving the parties' children with [Richard], she has only seen the children a handful of times.

2.) [Julissa] chose to relocate to the State of Florida in the summer of 2013 which further reduced her opportunity to see her children.

3.) Clearly, the environment in the parties' marital residence became extremely tense, stressful and unpleasant for these children and [Richard] from early October 2012 through May 2013 as evidenced by [Richard's] Exhibit No. 4. As noted above, [Julissa] is clearly the aggressor in these recorded conversations. There is no reason to not believe that these confrontations with [Richard] in the presence of these children did not occur at other times when not recorded.

4.) The few visitations that [Julissa] has had with the children did not go smoothly.

5.) The parties' oldest daughter, R.T., has testified clearly that at this point in time she is not interested in, nor does she desire a relationship with her mother, [Julissa].

2



6.)    There is insufficient evidence for the Court to conclude where the children would be staying if visitation with them was granted to [Julissa].

7.)    [Julissa] has a history of mental illness that has only worsened through the stress of this protracted divorce. She is allegedly seeing new doctors and counselors in Florida, the identity of which is unknown or unclear. She was being prescribed medication when in Arkansas, but her medications in Florida are unknown.

8.)    See Finding of Fact No. 10, above (Custody). [No. 10 provides, "In response to questions by the Court, Dr. Doray revealed that [Julissa] needs intense therapy on a weekly basis, both individual and group. Further, [Julissa] needs medications. There is little creditable proof [Julissa] is following this advice."]

9.)    In short, everything about Florida is a mystery.

The trial court then reached the following conclusions regarding the manner in which visitation should be structured:

1.)    Until the Court is satisfied these children will be safe in a visitation setting in Florida, all visitation with [Julissa] will be exercised in Arkansas.

2.)    Until the Court is satisfied [Julissa] is actively trying to manage her issues of mental and emotional health by revealing her doctors in Florida, and divulging the treatments and medications she is receiving, visitation should be supervised by a third party approved by the Court.

3.)    Because the visitation between [Julissa] and the children have been so infrequent and the relationship between [Julissa] and her daughters has deteriorated to a truly sad state, it is believed that the rebuilding of the mother–daughter relationship will best be achieved by shorter but more frequent visits.

Accordingly, [Julissa] while she remains a nonresident of Arkansas is awarded visitation one weekend per month to be exercised on a Saturday and Sunday from 8:00 a.m. to 8:00 p.m. [Julissa] shall give [Richard] not less than thirty days' notice of her intent to exercise this visitation.

No visitation shall take place however until a supervisor is presented and approved by the Court.

Julissa contends that the trial court abused its discretion in awarding her only supervised, non-overnight visitation. In support of her contention, she argues the trial court had allowed non-supervised, overnight visitation before the last two days of the final hearing and that nothing had changed between the previous visitation and the final hearing. She notes that the clinical psychologist who examined her and the children and the attorney ad litem charged with representing the children reported to the trial court that Julissa and the children needed as much visitation as could be arranged and expressed no reservation about the children's welfare and safety with Julissa. We find no abuse of discretion in the manner in which the trial court fashioned visitation.

The trial court's temporary order was entered on May 23, 2013. Temporary custody of the children was awarded to Richard, and the following temporary visitation was ordered for Julissa:

> Julissa Mendez Tanner is awarded reasonable and seasonable visitation with the minor children. No visitation shall take place at the Women's Shelter, where Plaintiff is currently residing. Plaintiff shall advise Defendant of the location where she intends to exercise visitation.

The final hearing was held over the course of several days in November 2013 and January 2014, ending on January 24, 2014. Despite Julissa's assertion otherwise, some significant changes did occur in that time frame—the most significant of which was her move to Florida in August 2013. While it is perfectly understandable she would want to move closer to her family, that move had consequences. It undeniably made visitation with the children much more difficult and expensive. Supervised or not, Julissa had only four total visits with the children between May 2013 and January 24, 2014, with only two of those visits occurring

4

after her August move to Florida. In addition, the move disrupted Julissa's medical care and treatment, leaving the trial court with no solid evidence that she was receiving treatment in Florida. Julissa's job with the Air Force had required high-level security clearance, but it also aggravated the depression and posttraumatic stress that she was already dealing with because of the earlier accidental drowning death of her son, which resulted in her departure from the service.

Julissa references the favorable comments about her from the psychologist and the attorney ad litem, but she ignores the fact that the trial court was also presented with other matters contained in both the clinical psychologist's report and the ad litem's proposed findings. For example, the psychologist reported that, while Richard had engaged in "negative gate keeping behaviors," Julissa had, too: "Both of Mr. Tanner's and Ms. Tanner's negative gate keeping behavior and Ms. Tanner's inconsistent parenting style have contributed to the difficulties in the children developing positive child-parent relationships." The psychologist also reported, "All of the girls indicated their preference to continue to live with their father, Mr. Tanner, with all wanting limited visits with their mother." The report recommended family therapy between Julissa and the children "to address their communication skills and ways to develop realistic plans for interactions between them so that all know what to expect during visitations and all have an outlet for sharing what is working and what is not working." Julissa also fails to mention the attorney ad litem's proposed findings of fact and conclusions of law included findings that "both parties have equally attempted to influence the minor children's opinions of the other parent"; Julissa's relationship

with R.T. (the oldest daughter) was "in a state of disrepair at this time"; Julissa had "provided no substantial proof of stable housing at this time, other than very limited testimony of her future intentions"; and Julissa "has been diagnosed with Post-Traumatic Stress Disorder and Major Depressive Disorder, and her treatment has been sporadic and at this time appears to have ended."

The trial court was confronted with testimony and exhibits in this case that were long, confusing, contradictory, and disturbing, and we find no clear error in the trial court's findings of fact regarding visitation. Credibility of the witnesses was very much at issue; that is a matter for the trial court to determine, not this court. *Williams, supra.* We are simply not left with a definite and firm conviction that the trial court made a mistake in finding the facts as it did, and we see no abuse of discretion in the manner in which the trial court fashioned visitation between Julissa and the children. The ordered visitation very clearly leaves open the possibility for Julissa to convince the trial court at some point the children would be safe visiting her in Florida and supervision of her visitation would be unnecessary.

In her second point of appeal, Julissa challenges an evidentiary ruling made by the trial court, contending the trial court abused its discretion in excluding statements by one of the parties' younger daughters as hearsay. Julissa argues her daughter's statements were not offered for the truth of the matter asserted but were instead offered to show the falsity of the child's belief that she was not half Puerto Rican. Julissa contends the evidence supported her allegations that Richard had been alienating the children from her.

Hearsay is "a statement, other than one made by the declarant while testifying at the

trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c). We review evidentiary rulings for an abuse of discretion. *Kuelbs v. Hill*, 2010 Ark. App. 427, 379 S.W.3d 47. An evidentiary error must be prejudicial to justify reversal. *Webb v. Thomas*, 310 Ark. 553, 837 S.W.2d 875 (1992).

During the testimony of Tangela Smith (Julissa's friend who accompanied her on a visitation with the children in April 2013), Julissa's counsel attempted to elicit testimony that one of the daughters was not familiar with her own ethnicity. In explaining how she knew that, Tangela began to testify, "The little girl start stating—the little girl—," and Richard's counsel objected based on hearsay. Julissa's counsel argued:

> It's not hearsay. Arkansas Rule of Evidence 801. We're not—801(c)—we're not offering this to prove whether the child is German or Puerto Rican or Italian or anything. We're offering it to prove what the child thinks.
>
> . . . .
>
> Because the child thinks she's German, and we're not offering it to prove that the child is German.

The trial court sustained the objection, concluding that the testimony would be hearsay. Counsel was then allowed to proffer the following testimony from Tangela Smith:

> We were riding in the car, listening to music, and she stated, "Oh my god, I'm German." Her mom told her that she was half Puerto Rican and German, and she said that she "didn't like Spanish." Julissa told her that Spanish is part of her heritage. She just wanted to argue that she wasn't at all.
>
> The little girl was adamant that she was German and not Puerto Rican.

We agree that the trial court erred in concluding the profferred testimony was hearsay. As explained by Julissa's counsel, the statements were not being offered to prove the truth of the

matter asserted, i.e., that the child was actually German and not Puerto Rican, but simply to show that the child made the statements.

We are not convinced, however, that the evidentiary error was prejudicial. Julissa argues it was not harmless because it showed the lengths to which the children were being alienated from her by Richard. However, the trial court was presented with other evidence attempting to demonstrate that Richard was trying to alienate the children from her. Thus, evidence supporting Julissa's alienation theory was before the trial court even though the child's statements were excluded. In addition and as previously discussed, both the psychologist and the attorney ad litem concluded that both parents had been engaged in attempts to alienate the children. Consequently, while we disagree with the trial court's assessment of this evidence, the error in excluding it does not provide a basis for reversal.

For her final point of appeal, Julissa contends that the trial court erred in calculating the amount of child support. She argues the court gave a faulty basis for refusing to give her credit for the Social Security disability payments Richard was receiving for the children based on her disability because the trial court found that it had no evidence of the amount. She contends this was error because the trial court, having been presented with such evidence, had mentioned it "from the bench and in the temporary order."

The trial court made the following findings of fact regarding child support:

1.) [Julissa's] Exhibit No.1 to the final hearing commenced on November 6, 2013, is incomplete. She testifies she was receiving Social Security Disability in the amount of $1,784.00 per month which is not reflected on her Affidavit of Financial Means dated November 7, 2013.

2.) [Julissa's] Exhibit No. 1 to the final hearing is in error. [Julissa] reported her

military retirement was $893.48 per month when in fact it is $2,893.90 per month as reflected in [Julissa's] Exhibit No. 3 to the temporary hearing held on May 1, 2013.

3.)    [Julissa] reports in her Affidavit of Financial Means ([Julissa's] Exhibit No. 1) to the final hearing that she receives $2,073.00 monthly in VA Disability.

4.)    [Julissa's] income for purposes of setting child support is, to wit:

$1,748.00    Social Security
$2,893.90    Military Retirement
$2,073.00    VA Disability

$6,714.90    Per Month

5.)    *The Court cannot find any reference or argument regarding the amount of Social Security Disability payment being made to directly to the children.* [sic]

(Emphasis added.)  Based on these findings, the trial court calculated child support in the following manner:

1.)    The Court cannot factor the Social Security payments being made to the children of the parties because their amounts have not been furnished to the Court.

2.)    Income of $6,714.90 per month for three dependents would result in child support of $1,678.00 per month (25% of $6,714.00).

3.)    [Julissa] shall commence paying child support to defendant in the amount of $1,678.00 per month commencing the month after [Richard] pays [Julissa] her equity in the marital residence as addressed in the Division of Real Property, below, Conclusions of Law No. 5.  Until the marital residence is refinanced, [Julissa] will continue to satisfy the monthly mortgage payments on the marital residence through the month she receives her equity as provided below. [C of L No. 5 in part, "[Richard] shall refinance this debt within 180 days of the Decree being entered and shall pay to [Julissa] her equity interest."]

The temporary order relied upon by Julissa in making her argument was filed May 23, 2013.  It provided in paragraph 3: "Richard Tanner shall receive the social security disability

income awarded to the children in lieu of child support, which is approximately $252.00 per child." Julissa urges that, because the trial court had made this earlier finding of an amount in its own temporary order, it was error to then find in the final order that it could not "find any reference or argument regarding the amount of Social Security disability payment being made to directly to the children." We are not persuaded, however, because the time to produce the evidence for the final decision was at the final hearing—and evidence of the correct amount of Social Security disability income that was being deposited into Richard's bank account was never introduced at the final hearing. It was Julissa's burden to do so, and she did not.

Instead, she attempted to provide the information in a posttrial motion to amend the decree, where paragraph 4 provided in part:

> [Julissa] has received a notice from Social Security that outlines the dollar amount of support received by the children. (See Letters from Social Security Administration addressed to Richard Tanner, dated June 10, 2014, attached hereto collectively as Exhibit 2 and incorporated herein). Said amount is $287.00 per month for each child, for a total of $861.00 per month already received by Richard Tanner as support for the children.

Her posttrial motion further provided "The mortgage payment she has been making has been $1785.06 per month, and that will increase to $1,901.54 per month beginning next month, July 1, 2014. (See Letter from Navy Federal Credit Union attached hereto as Exhibit 3 and incorporated herein.)"

Richard's response to the motion to amend the decree pointed out that the post–trial motion did not contain any allegations of "material changes of facts or circumstances," which he contended were required for the trial court to amend its decree; in addition, he noted that,

10

pursuant to Rule 52(b), any motion for amendment of the court's findings of fact previously made must be filed "no later than 10 days after entry of judgment" and this posttrial motion was filed beyond that time period. The trial court never ruled on the posttrial motion, and it was deemed denied thirty days after it had been filed.

The filing of the posttrial motion did not help Julissa's cause because a posttrial motion cannot substitute for the introduction of evidence at the trial. Not only was the motion filed beyond the ten-day limit, but also, its purpose was not to amend the decree's findings of fact; rather, it was to provide the court with the evidence that was missing at the hearing.

Finally, Julissa "concedes that a trial court may award payment of a mortgage in lieu of child support," but argues that in such situations, the amounts should be equivalent, and here, they were not. We do not disagree with her basic premise that in awarding payment of a mortgage in lieu of child support, the amounts should be equivalent. However, her argument to us is that the amount of the mortgage payment was not equivalent to the amount of child support she *should* have been ordered to pay. That is, she bases her argument on her position that the trial court erred in not giving her credit for the Social Security disability payments that were being made directly to the children. Because we have rejected her argument in that regard, we also find no merit in this argument that the amounts were not equivalent.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Debra J. Reece*, for appellant.

*Sandra C. Bradshaw*, for appellee.