DAVID M. GLOVER, Judge
This is an appeal from a decree of divorce that the Circuit Court of Pulaski County entered on March 15, 2017. The appellant, Dean Goodson, raises ten points on appeal that challenge the circuit court's rulings on visitation, spousal support, division of marital property, attorney's fees, and the admission of evidence. He also alleges the appellee, Sharon Bennett, failed to properly serve him with the summons and complaint for divorce. Because several of these issues are not preserved for appellate review, and those that are preserved are without merit, we affirm the decree.
I. Factual Background
Sharon Bennett and Dean Goodson were married on June 7, 2009. They have one son, T.G., who is five years old. Goodson also has an eleven-year-old daughter, S.G., from a previous relationship with Mollie Yoder.
Bennett filed a complaint for divorce and a petition for an order of protection on July 14, 2015, following a domestic-abuse incident that occurred two days earlier, on July 12, 2015. Goodson attacked Bennett with such force that he damaged her jaw and ruptured one of her eardrums. Goodson's children, S.G. and T.G., were in the home during the attack. After a hearing on August 3, 2015, the circuit court entered an order of protection that granted Bennett sole custody of T.G. and prohibited *853 Goodson from having any contact with Bennett or T.G. for ten years. The circuit court also entered a ten-year order of protection on the petition of Mollie Yoder, who requested it for herself based on Goodson's conduct during their relationship, as well as for S.G., who was present in the home during Goodson's brutal attack on Bennett. Goodson did not file any appeal from the two ten-year orders of protection.
Goodson filed an answer and counterclaim for divorce on August 17, 2015, as well as an amended counterclaim on July 29, 2016. Among other things, Goodson's counterclaim sought joint custody of T.G. A month later, on September 17, 2015, Goodson filed a motion to stay the final hearing until after the resolution of the criminal charges related to his attack on Bennett. Goodson argued the stay was warranted because his outstanding criminal charges would force him to invoke his Fifth Amendment right against self-incrimination during the divorce proceedings, leaving him unable to adequately litigate custody and visitation of T.G. In an order entered on November 9, 2015, the circuit court denied the motion to stay the final hearing but agreed to reserve "matters regarding custody and visitation" of T.G. until after the conclusion of the criminal case. Goodson later withdrew his request to reserve the determination of custody and visitation, however, after the criminal case was continued indefinitely.
The final divorce hearing was set for August 31 and September 1, 2016. Goodson obtained new counsel, who entered their appearance on July 20, 2016. Goodson simultaneously sought a continuance, alleging his new counsel had scheduling conflicts with the scheduled trial dates. Goodson also alleged a continuance was warranted because he "[had] criminal charges pending which would prohibit him from testifying to material issues in [the] matter," and consequently, he would "be unable to adequately defend himself, the minor child, and the marital estate." The circuit court denied the motion for a continuance after a telephonic hearing that occurred on July 21.
The case proceeded to a two-day final hearing as scheduled on August 31 and September 1. In addition to the physical and emotional abuse that she suffered during the marriage, Bennett testified about the couple's interests in their tree-trimming operation, Giraffe Tree Service, and its associated business, Giraffe Financial. Goodson owned Giraffe Tree Service prior to their marriage in 2009, and Giraffe Financial was a payroll service created, in part, to protect Goodson's income from Ms. Yoder's claims for increases in child support. Bennett testified that, at Goodson's instruction, she regularly "moved money between Giraffe Tree and Giraffe Financial," to "pay [her]self," as well as to "to keep the child support down" because "[Goodson] didn't feel that he should be paying that amount in support." According to Bennett, Goodson also gave her a "blanket authorization" to sign checks, insurance claims, and other documents associated with the businesses.
Bennett further explained that both she and Goodson used money from the Giraffe business accounts, as well as a $25,000 insurance loan, for various personal items, including guns, ammunition, horses, and jewelry. The couple also kept large amounts of cash in their home, including $50,000 that was in a Browning safe in their garage when they separated in July 2015.
In addition, Bennett testified about her infidelity, admitting having had affairs with two men during the marriage. She acknowledged she lent $2500 to one of her paramours and paid for the hotel rooms *854 where the affairs took place. She also claimed she disclosed the affairs to Goodson as they underwent marriage counseling toward the end of their marriage.
Goodson invoked his Fifth Amendment right against self-incrimination during the final hearing, choosing instead to make his case through his cross-examination of Bennett and his own witnesses. Through cross-examination and the testimony of his financial expert, Timothy Ridge, Goodson attempted to demonstrate that Bennett made several fraudulent transactions with money from Giraffe Tree Service, and that she alone was responsible for the couple's failure to file income-tax returns during their marriage. Goodson also attempted to demonstrate that he was suitable for strictly supervised visitation with T.G. through the testimony of his stepmother, Betty Goodson, and a psychologist, Dr. Dawn Doray.
On March 15, 2017, the circuit court entered a decree granting Bennett a divorce and awarding her attorney's fees and costs. The circuit court subsequently entered a separate order setting the amount of the fee and cost award at $30,000. Goodson now appeals those orders.
II. Issues on Appeal
Goodson argues that reversal of the decree is warranted because (1) he was not served with the complaint and summons in accordance with Rule 4 of the Arkansas Rules of Civil Procedure ; (2) the circuit court failed to exercise discretion or utilize any analysis under Arkansas Code Annotated 9-13-101 when it denied Goodson visitation with his minor son; (3) the circuit court abused its discretion by denying Goodson's motion for a continuance; (4) the circuit court abused its discretion when it admitted the transcript of a hearing on a petition for an order of protection; (5) the circuit court unequally divided the marital assets without making the findings required by Arkansas Code Annotated 9-12-315 ; (6) the circuit court erred when it awarded spousal support without analyzing the parties' financial needs, ability to pay, and other relevant factors; (7) the circuit court erred in awarding attorneys' fees to the appellee, Sharon Bennett; (8) the circuit court erred by not allowing Goodson to impeach Bennett's credibility; (9) the circuit court erred by denying Goodson's motion to reopen the record based on newly-discovered evidence; and (10) the circuit court's errors cumulatively denied Goodson a fair trial.
III. Standards of Review
This court generally reviews domestic-relations cases de novo, see Berry v. Berry , 2017 Ark. App. 145, at 2, 515 S.W.3d 164, 166, but applies the abuse-of-discretion standard to the circuit court's decisions denying motions for continuance, see James v. Arkansas Dept. of Human Servs. , 2016 Ark. App. 276, at 2-3, 2016 WL 2981481, and awarding alimony. See Williams v. Williams , 2018 Ark. App. 79, at 12, 541 S.W.3d 477, 484. We also review a circuit court's evidentiary rulings for abuses of discretion. See Southern v. Highline Tech., Innovations Inc. , 2014 Ark. App. 613, at 4, 448 S.W.3d 712. We will not find an abuse of discretion, however, unless a circuit court acted "improvidently, thoughtlessly, or without due consideration." Gerber Prods., Co. v. CECO Concrete Constr., LLC 2017 Ark. App. 568, at 6, 533 S.W.3d 139, 143.
Likewise, we will not reverse a circuit court's finding of fact unless it is clearly erroneous. Berry , 2017 Ark. App. 145, at 2, 515 S.W.3d at 166. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake."
*855 Id. "In reviewing a circuit court's findings of fact, [this court] gives due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony." Id. Applying these standards to the decisions that Goodson challenges on appeal, we affirm the decree.
IV. Discussion
A. Service of the Summons and Complaint
Goodson argues, for the first time on appeal, that the case should be reversed and dismissed because the record does not contain any proof demonstrating he was properly served with Bennett's summons and complaint. Additionally, relying on Raymond v. Raymond , 343 Ark. 480, 36 S.W.3d 733 (2001), and Criswell v. Office of Child Support Enforcement , 2014 Ark. App. 309, 436 S.W.3d 152, he suggests his appearance in the case cannot be grounds to apply the doctrines of estoppel or waiver. Because Goodson waived his challenge to the circuit court's personal jurisdiction by seeking affirmative relief, we affirm.
"Arkansas law is long settled that service of valid process is necessary to give a court jurisdiction over a defendant." Affordable Bail Bonds, Inc. v. State , 2015 Ark. App. 44, at 4, 2015 WL 375037. The defense of personal jurisdiction, however, may be waived by the appearance of the defendant without raising an objection. Id. This court has "long recognized that any action on the part of a defendant, except to object to jurisdiction, which recognizes the case in court, will amount to an appearance." Id. "In deciding whether a defendant has waived his rights and entered an appearance, a determining factor is whether the defendant seeks affirmative relief." Id.
As indicated above, Goodson filed an answer to Bennett's complaint for divorce and sought affirmative relief by filing a counterclaim-and an amended counterclaim-in the circuit court. He also sought affirmative relief in the form of a stay of the final hearing until after the conclusion of the criminal case against him. In addition, he never argued below, as he does here, that he was not properly served with Bennett's summons and complaint. Accordingly, Goodson waived his challenge to the circuit court's personal jurisdiction.
Goodson's reliance on Raymond and Criswell is unpersuasive. While the defendants in each of those cases signed reconciliation and custody agreements demonstrating they had actual knowledge of the divorce proceedings, neither sought any affirmative relief, as Goodson so clearly did here. See Raymond , 343 Ark. at 487, 36 S.W.3d at 737 (observing that signing a reconciliation agreement does not constitute an appearance because it is "not a responsive pleading" and does not "request any relief from the court"); see also Criswell , 2014 Ark. App. 309, at 8, 436 S.W.3d at 157 (observing that defendant signed the custody agreement before filing of the complaint and "never filed any pleading or otherwise appeared before the divorce decree was entered"). Therefore, Goodson's challenge to the service of the summons and the complaint does not warrant reversal.
B. Visitation
For his second point, Goodson argues that the circuit court effectively applied the doctrine of collateral estoppel to the issue of visitation, allowing the entry of the ten-year order of protection to conclusively determine that Goodson should be denied visitation in the divorce decree. He specifically claims there is no indication the circuit court considered the testimony *856 at the final divorce hearing that weighed in favor of granting him visitation, particularly Dr. Dawn Doray's testimony about the strictly supervised visitation the doctor offered at her clinic. Because the circuit court did not abuse its discretion when it denied Goodson visitation in the final decree, we affirm.
Goodson's claim that the circuit court allowed the issuance of the order of protection to dictate the outcome of visitation in the divorce is simply incorrect. The decree plainly indicates that while the order of protection weighed heavily-as it should-in the analysis, the circuit court considered the evidence admitted at the final hearing when it denied visitation:
The Plaintiff is awarded sole custody of the parties' minor child with no visitation or contact by Defendant. Pursuant to the Final Order of Protection entered in 60DR-2015-2912, Defendant shall have no contact with the Plaintiff or the minor child for the period of the ten years recited in the final order. No appeal was taken from that order and nothing in the testimony in the final hearing in the divorce action proved to this Court any modification of the Final Order of Protection was warranted or in the best interest of the child. It is not in the child's best interest to have any contact with the Defendant.
(Emphasis added.)
The circuit court's decision to deny visitation was a sound exercise of its discretion. The circuit court was bound to consider its earlier finding of domestic abuse when it determined visitation, see Ark. Code Ann. §§ 9-13-101(c)(1) & 9-15-215 (Repl. 2015), and the transcript of the August 3, 2015, hearing, which was admitted into evidence at the final hearing, demonstrates that visitation with Goodson was not in T.G.'s best interest.
According to the testimony at the August 3, 2015, hearing, Goodson subjected Bennett to domestic abuse for most of their seven-year marriage. Bennett testified, in detail, about the brutal attack that occurred on July 12, 2015, as well as an earlier attack on June 15, 2015, that also occurred in the presence of their children. Bennett further testified that Goodson attempts to manipulate the children emotionally and "poisons" them by speaking negatively about their mothers. Mollie Yoder gave similar testimony; explaining that, among other things, Goodson stalked her, beat her with a baseball bat, and "poisoned my daughter with just his shame and his manipulation against her."
The evidence at the final divorce hearing also did not weigh in favor of modifying the order of protection to allow Goodson visitation with his son. Goodson did not present much of a case in favor of visitation, offering only the testimony of his stepmother-who denied that he was abusive-and Dr. Doray.
Bennett, on the other hand, detailed both the verbal and physical abuse she suffered throughout the marriage-sometimes in the presence of the children-as well as the verbal abuse that was directed at the children themselves. According to Bennett, Goodson would tell T.G. that "something's wrong with him," that he was "stupid," and "[y]our mom doesn't love you." Goodson would also discipline T.G. by "throwing him on the bed with force," and "hold[ing] the door shut," as the child screamed. Bennett testified Goodson's abusive behavior negatively affected T.G., causing him to "run and hide" when he feared that he would be reprimanded; to have "outbursts at school where he hit kids," and to "[tug] his ear a lot," and "[bite] his shirt." T.G.'s behavior improved during the year that followed the issuance of the order of protection, and Bennett *857 testified her "greatest fear" regarding supervised visitation was that T.G. "would start feeling anxiety all over again, and that he would regress in behavior, that he would regress on several levels." In light of all this testimony, the circuit court did not abuse its discretion when it determined that visitation with Goodson was not in T.G.'s best interest, and Goodson's argument to the contrary, which invites this court to reweigh the evidence admitted at the final divorce hearing, is unavailing. See Blasingame v. Arkansas Dep't of Human Servs. , 2018 Ark. App. 71, at 6, 542 S.W.3d 873, 876.
C. Motion for Continuance
Goodson next argues that the circuit court abused its discretion by denying a continuance after he retained new counsel, asserting that he was prejudiced because his counsel "was severely limited in the amount of preparation time for the trial," and he was "forced to choose between his [Fifth] Amendment right against self-incrimination in his criminal trial and the need to testify in his divorce and custody case." Because Goodson has failed to bring up a record demonstrating an abuse of discretion, and otherwise has failed to demonstrate that he suffered any prejudice, we affirm.
In any event, Goodson fails to demonstrate he was prejudiced by the circuit court's denial of his motion for a continuance. "An appellant must not only demonstrate that the circuit court abused its discretion by denying the motion, but also must show prejudice that amounts to a denial of justice." Sims v. Moser , 373 Ark. 491, 510, 284 S.W.3d 505, 520 (2008). Goodson does not identify any specific prejudice that resulted from his counsel's alleged lack of adequate time to prepare for trial. He also does not allege what testimony, if any, he would have given if he had not invoked the Fifth Amendment at the final hearing, and the matters for which he claimed his testimony was most relevant-custody and visitation-were largely settled when the circuit court issued the ten-year order of protection a year before the final hearing. Therefore, we affirm.
D. Admission of Prior Hearing Transcript
During the final hearing, Bennett sought to introduce the transcript of the August 3, 2015, hearing on her petition for an order of protection, arguing admission of the transcript was necessary to avoid relitigation of the matters settled by the order of protection, as well as "for the clarity of the record." Goodson objected, arguing the transcript was cumulative to the evidence that the circuit court-the same court that issued the order of protection-heard at the hearing. Goodson further suggested the transcript was not the "best evidence" and was inadmissible hearsay. The circuit court admitted the transcript, finding it was "admissible pursuant to Rules 401 and 402 of the Rules of Evidence."
Goodson now argues on appeal that the circuit court abused its discretion because the transcript was a prior consistent statement that did not, as it must, rebut any "express or implied charge against [Bennett] of recent fabrication or improper influence or motive[.]" Ark. R. Evid. 801(d)(1)(ii) (2017). Because Goodson has failed to preserve this argument for appellate review, the circuit court's decision to admit the transcript is affirmed.
"Arguments not raised at trial will not be addressed for the first time on appeal." Dixon v. State , 2011 Ark. 450, at 16, 385 S.W.3d 164, 175. A party is bound by the scope and nature of the arguments made at trial, and a general *858 objection does not preserve a specific point. Id. While Goodson lodged a general hearsay objection to the admission of the transcript, he did not specifically argue-as he does here-that it did not meet the criteria for the admission of a prior consistent statement. And even if Goodson's general objection preserved the specific point he raises here, the circuit court's ruling did not address hearsay at all, ruling only that the transcript was admissible because it was relevant. Goodson's failure to obtain a ruling on hearsay, in other words, is another obstacle to our review, see Meador v. Total Compliance Consultants, Inc. , 2013 Ark. 22, at 4, 425 S.W.3d 718, 720-21, and we must affirm.
E. Division of Marital Property
Goodson next argues that the circuit court erred by unequally dividing the marital property in Bennett's favor without stating the reasons for doing so, as required by Arkansas Code Annotated section 9-12-315(a) (Repl. 2015). He further appears to suggest that the marital property should have been unequally divided in his favor because Bennett allegedly dissipated the marital assets by giving away Goldendoodle puppies the couple had planned to sell for $1200 and by giving $2500 to one of her extramarital paramours. We affirm.
This court reviews a circuit court's division of marital property de novo, but we will not reverse the circuit court's findings of fact unless they are clearly erroneous, or against the preponderance of the evidence. See Kelly v. Kelly , 2014 Ark. 543, at 5, 453 S.W.3d 655, 660. Further, a circuit court "has broad powers to distribute property in order to achieve an equitable distribution." Keathley v. Keathley , 76 Ark. App. 150, 157, 61 S.W.3d 219, 224 (2001). The overriding purpose of the property-division statute, Arkansas Code Annotated section 9-12-315, is to enable the court to make a division of property that is fair and equitable under the circumstances, and a circuit court's unequal division of property will not be reversed unless it is clearly erroneous. Id. In reviewing a circuit court's findings, this court defers to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. Id.
Arkansas Code Annotated section 9-12-315(a)(1)(A) provides that "[a]t the time a divorce decree is entered, [a]ll marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable." In that event, the court shall make some other division the court deems equitable, taking the following factors into consideration:
(i) The length of the marriage;
(ii) Age, health, and station in life of the parties;
(iii) Occupation of the parties;
(iv) Amount and sources of income;
(v) Vocational skills;
(vi) Employability;
(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;
(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as homemaker; and
(ix) the federal income tax consequences of the court's division of marital property.
Ark. Code Ann. § 9-12-315(a)(1)(A)(i-ix) (Repl. 2015). In addition, "[w]hen property is divided according to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in *859 the order entered in the matter." Ark. Code Ann. § 9-12-315(a)(1)(B).
Goodson's argument that the circuit court unequally divided property apparently is based on the premise that marital debt and marital property both must be equally divided under Arkansas Code Annotated section 9-12-315. Specifically, Goodson argues the circuit court's order that he pay the $8,896 marital debt on the couple's Capital One credit card proportionally reduced the value of the property that was awarded to him, such that there was an unequal division of property in Bennett's favor. He is mistaken. Arkansas Code Annotated section 9-12-315"does not apply to the division of marital debt," and "there is no presumption that an equal division of debts must occur." Weatherly v. Weatherly , 87 Ark. App. 291, 296, 190 S.W.3d 294, 296 (2004).
Further, there is no indication the circuit court otherwise made an unequal division of the marital assets in Bennett's favor. The circuit court awarded the parties their respective vehicles, their one-half interest in the $50,000 in cash that was in the Browning safe, as well as their one-half interest in the personal property that remained, including guns, televisions, the Browning safe itself, jewelry, a Rolex watch, and gold and silver coins. Goodson also does not point to any evidence of fraud that would have warranted a reduction in Bennett's share of the marital assets to compensate for the value of the Goldendoodle dog or the money that she gave to one of her paramours. See Wainwright v.Merryman , 2014 Ark. App. 156, at 4, 2014 WL 988977 ("A spouse is not entitled to be reimbursed in a divorce proceeding for every nonconsensual transfer of marital funds made by the other spouse in the absence of proof of an intent to defraud."). Therefore, because Goodson fails to demonstrate the circuit court clearly erred when it divided the marital property, we affirm the decree.[1]
F. Spousal Support
In the divorce decree, the circuit court allocated over $13,000 in marital debt owed to medical providers and counselors, as well as the couple's unpaid obligation to the Internal Revenue Service, to Goodson. In doing so, the court found some of the debts were "incurred by [Bennett] due to the physical and mental abuse she suffered at the hands of [Goodson.]" The circuit court further provided that "[t]he aforementioned marital debts are considered by this [c]ourt to be in the nature of support owed to the plaintiff and the minor child," and Goodson "shall reimburse [Bennett] for any portion of these debts she has previously paid within ninety (90) days of the Divorce Decree entered in this matter." On appeal, Goodson argues the circuit court's characterization of the debt payments as "in the nature of support," transforms the allocation of debt into an award of alimony that is not supported by any analysis of Bennett's financial need, Goodson's ability to pay, or other relevant factors. Therefore, Goodson suggests the circuit court's alleged award of alimony is an abuse of discretion that must be reversed. He is incorrect.
Generally, "the purpose of alimony is to rectify economic imbalances in earning power and standard of living in light of the particular facts in each case,"
*860 and "[t]he primary factors to be considered in determining whether to award alimony are the financial need of the one spouse and the other spouse's ability to pay." Foster v. Foster , 2016 Ark. 456, at 9, 506 S.W.3d 808, 814-15. Secondary factors, such as the financial circumstances of both parties, the couple's past standard of living, and the earning ability and capacity of each party, should also be considered. Id. , 506 S.W.3d at 815.
An award of temporary alimony , however, need not be supported by an analysis of the needs of the payee spouse or the payor's ability to pay if other considerations make alimony necessary to achieve an equitable result. See Russell v. Russell , 2013 Ark. 372, at 7-8, 430 S.W.3d 15, 20. Although the equitable considerations are different, we view the circuit court's allocation of these debts to Goodson "in the nature of support," as an award of temporary alimony akin to the one at issue in Russell , in which the circuit court ordered the appellant to pay his ex-wife alimony in the amount of $11,370 per month for a period of twenty-four months to offset an unequal division in marital property. See id. at 5, 430 S.W.3d at 19. Here, the allocation of debt to Goodson and the payments to reimburse Bennett achieved the equitable result of making Goodson responsible for marital debts that were incurred as a direct result of his "horrific acts of abuse against [Bennett]," which "far outweigh[ed] any bad acts of [Bennett]." The allocation of the tax debt was consistent with the circuit court's finding that the couple's failure to file income taxes was "a decision made by [Goodson]." Under these circumstances, the circuit court did not "act improvidently, thoughtlessly, or without due consideration," see Gerber , 2017 Ark. App. 568, at 6, 533 S.W.3d 139, when it awarded support without analyzing Bennett's need or Goodson's ability to pay.
G. Attorney's Fees
Goodson next argues that the circuit court abused its discretion when it awarded attorney's fees to Bennett. His argument is twofold. First, Goodson alleges Bennett did not file a motion that specified the "statute or rule entitling [her] to relief" as required by Arkansas Rule of Civil Procedure 54(e) (2017), within the time frame the circuit court ordered. Second, he suggests the circuit court awarded an unreasonable amount of fees and costs, alleging that Bennett's counsel charged for fees related to the order of protection, for which Bennett was already awarded fees, as well as for allegedly unrelated communications with the prosecuting attorney and detectives related to the criminal case. Because neither of these arguments has merit, we affirm the circuit court's order awarding fees and costs.[2]
The facts underlying the issue are these. On February 10, 2017, the circuit court filed a letter opinion providing that the court was granting Bennett "an absolute divorce" against Goodson and "award[ing] [Bennett] reasonable fees and costs incurred in this matter." The letter opinion directed Bennett's counsel to prepare a precedent consistent with the letter opinion, and it further directed Bennett's *861 counsel to "submit a fee petition with the precedent." The circuit court also ordered that Goodson would have seven days to respond to Bennett's fee petition.
On February 24, 2017, Bennett filed a petition seeking $41,648.64 in attorney's fees and costs. Goodson filed a response on March 3, 2017. In addition to disputing several of the charges in Bennett's fee petition, Goodson argued the petition "must fail as a matter of law" because it did not specify the "statute or rule entitling [her] to relief" as required by Arkansas Rule of Civil Procedure 54(e) (2017). Bennett filed an amended petition on March 10, 2017, alleging "[t]he Plaintiff, as the prevailing party, is entitled to costs, as per Rule 54(d)(1)," and "[t]he Plaintiff, as the prevailing party, is entitled to attorneys' fees and costs as per Rule 54(e)(1) and Arkansas Code Annotated section 9-12-309(a)(2)." Goodson filed a response on March 15, 2017, arguing that Bennett's amended petition, which was filed outside the time prescribed in the circuit court's letter opinion, did not cure the defect in her first petition. On that same day, the circuit court entered a "Decree of Divorce and Final Orders," which, like the letter opinion, provided that Bennett was "awarded her reasonable attorney fees and costs incurred in this matter," and gave Goodson "seven days to respond to the fee petition." Subsequently, on March 30, 2017, the circuit court entered an order awarding Bennett $30,000 in fees and costs.
We reject Goodson's first argument, that the circuit court abused its discretion because Bennett failed to file an amended fee petition within the time prescribed by the circuit court's letter opinion, for three reasons. First, the circuit court is always free to exercise its inherent authority to grant fees in domestic-relations cases, see Vice v. Vice , 2016 Ark. App. 504, at 9-10, 505 S.W.3d 719, 725, obviating any need for Bennett to cite the statutory authority entitling her to fees. Second, even assuming Arkansas Rule of Civil Procedure 54(e)(2) still required Bennett to cite such authority in her motion, the amended motion exceeded only a prejudgment time limit and, for that reason, posed no risk to the interests protected by the 14-day postjudgment time limit in Arkansas Rule of Civil Procedure 54(e)(2). As the record demonstrates, Goodson had ample time to oppose Bennett's motion and seek appellate review of the circuit court's fee ruling along with the merits of the divorce case. Third, Rule 54(e)(2)'s authorization for the circuit court to set an alternate time table, which Goodson concedes, necessarily includes permission to extend it, which the circuit court apparently did when it granted Bennett's motion despite Goodson's objection to its timeliness. Cf. State Auto Prop. and Cas. Ins. Co. v. Swaim , 338 Ark. 49, 60-61, 991 S.W.2d 555, 562 (1999) (holding that oral motion for fees was acceptable because, in part, Rule 54(e)(2) authorizes a court to modify its procedure for requesting attorney's fees). Accordingly, for all of these reasons, we hold the circuit court did not abuse its discretion.
Goodson's argument challenging the reasonableness of the fee award is also unavailing. "In domestic-relations proceedings, the circuit court has the inherent power to award attorney fees, and the decision to award fees and the amount of those fees are matters within the discretion of the circuit court." James v. Walchli , 2015 Ark. App. 562, at 6-7, 472 S.W.3d 504, 508. Absent an abuse of that discretion, an award of fees will not be disturbed on appeal. Id. at 7, 472 S.W.3d at 508.
Furthermore, "[t]here is no fixed formula for determining what constitutes a reasonable amount of attorney fees." Id. "Because the trial court has presided *862 over the case and gained familiarity with the case and the extent and quality of the services rendered by the attorney, the trial court has a superior opportunity to assess the critical factors that apply." Id. Pertinent considerations can include "the attorney's judgment, learning, ability, skill, experience, and professional standing; the relationship between the parties and the importance of the subject matter of the case; the nature, extent, and difficulties of services; and the research, anticipation of defenses and means of meeting them[.]" Id. at 8, 472 S.W.3d at 508. Finally, "[t]he relative financial ability of each party is a consideration, but it is not determinative." Id.
Goodson has not demonstrated that the fees awarded to Bennett were unreasonable. The circuit court granted only $30,000 in fees and costs to Bennett-a substantial reduction from the $41,648.64 that she requested-and Goodson never requested specific findings demonstrating that even the reduced fee award is an abuse of discretion. See Tiner v. Tiner , 2012 Ark. App. 483, at 14-15, 422 S.W.3d 178, 186. Additionally, the complexity of the case, as well as the circuit court's finding that Goodson "pursued his counterclaim to further the expense of the litigation, to embarrass [Bennett], and to increase the emotional turmoil of [Bennett] in having to deal with [Goodson's] claims," indicates that the circuit court did not act "improvidently, thoughtlessly, or without due consideration," Gerber , 2017 Ark. App. 568, at 6, 533 S.W.3d 139, when it awarded $30,000.00 in fees and costs to Bennett. Accordingly, we affirm.
H. Impeachment
Goodson next argues that the circuit court abused its discretion by imposing a five-year limitation on his cross-examination of Bennett with her past allegations of sexual abuse. More particularly, he argues he should have been able to impeach her credibility by questioning her about a sexual-harassment complaint that she made against an employer, as well as an allegation of abuse that she made during her childhood. Because the trial court did not abuse its discretion by imposing the limitation, and Goodson cannot demonstrate prejudice in any event, we affirm the decree.
A circuit court has wide latitude to impose reasonable limits on cross-examination based upon concerns over confusion of the issues, see Gordon v. State , 326 Ark. 90, 93, 931 S.W.2d 91, 94 (1996), and the record demonstrates that the circuit court restricted Goodson only from asking about an allegation of physical abuse that she made against her father more than thirty years before she filed for divorce. The circuit court did not abuse its discretion by refusing to allow Goodson to impeach Bennett with that marginally relevant allegation.
In any event, "[a]n evidentiary error must be prejudicial to justify reversal," Tanner v. Tanner , 2015 Ark. App. 668, at 7, 476 S.W.3d 832, 836, and Goodson has not demonstrated he was prejudiced by the alleged restriction on his ability to impeach Bennett's credibility. First, the prior allegations apparently were intended to impeach Bennett's account of the attack on July 12, 2015; but her credibility was largely settled when the circuit court issued the final order of protection. Second, as indicated above, Goodson was able to cross-examine Bennett about the sexual-harassment complaint she made against an employer and was able to attack her credibility with questions concerning her extramarital affairs, false statements she made online, and the inconsistent statements she made regarding other details of the July 12, 2015, domestic abuse. Accordingly, because *863 Goodson cannot demonstrate prejudice from any evidentiary error, we affirm.
I. Motion to Reopen
On September 9, 2016, approximately one week after the conclusion of the trial, Goodson filed a "Motion to Reopen Record Due to Newly Discovered Evidence." In the motion, Goodson alleged that records Goodson subpoenaed from the Mutual Trust Life Insurance Company were produced the day after the trial concluded on September 1, 2016, and he requested the court consider an affidavit from Timothy Ridge, his financial expert. Mr. Ridge averred in the affidavit that several requests for loans against Goodson's whole-life insurance policy had been forged, and the implication of the motion, as well as Mr. Ridge's affidavit, was that Bennett was responsible for the alleged forgeries.
Bennett filed an answer on September 24, 2016, arguing that the evidence should be excluded because Goodson "fail[ed] to conduct discovery in a timely manner." In an attached affidavit, she also alleged she "was not part of Mr. Ridge's review of the [insurance] transactions." She further alleged that "there [was] no fraud," because she "was afforded permission by Defendant Dean Goodson to sign his name and make requests via our servicing agent." Bennett's affidavit also explained the circumstances of the alleged fraudulent transactions.
Several weeks later, on November 4, 2016, Goodson filed an "Amended Motion to Reopen the Record Due to Newly Discovered Evidence." In addition to Mr. Ridge's affidavit, the amended motion asked the circuit court to consider the affidavit of Kimberly Waters, who stated that Bennett implicitly urged her to evade service of a subpoena to testify at the trial; that Bennett told her how she should testify; that Ms. Waters knew about one of Bennett's affairs; and that Bennett attempted to break up Ms. Waters's marriage. The motion also requested that the circuit court reopen the record to consider the testimony of Logan Wilcoxson, one of Bennett's extramarital paramours, who failed to appear at the trial. In an answer filed on November 18, 2016, Bennett denied the allegations in Ms. Waters's affidavit and argued that, in light of her own testimony admitting her extramarital affairs, "Mr. Wilcoxson's testimony would have been irrelevant at the trial of this matter." In the letter opinion filed on February 10, 2017, and later in the decree entered on March 15, 2017, the circuit court denied Goodson's amended motion to reopen the record.
As he did below, Goodson argues that his amended motion to reopen the record is akin to a motion for a new trial and is therefore governed by Arkansas Rule of Civil Procedure 59 (2017), as well as an abuse-of-discretion standard of review. While we agree that the circuit court's denial of Goodson's motion should be reviewed for an abuse of discretion, we believe the court's ruling is more accurately viewed as one that simply excluded evidence. Goodson's amended motion seeking to reopen the record was filed well before the circuit court issued its letter opinion or entered the decree-when the circuit court was still free to consider the evidence without reversing any prior decision on the merits of the case.
In either event, the circuit court did not abuse its discretion by denying the motion to reopen. Relevant evidence may be excluded if its probative value is outweighed by the danger of needless presentation of cumulative evidence, Arkansas Rule of Evidence 403 (2017), and Mr. Wilcoxson's and Ms. Waters's proposed testimony concerning Bennett's extramarital affairs was *864 cumulative of Bennett's trial testimony acknowledging them. Any value their testimony would have had for Goodson's counterclaim was lost when he nonsuited the counterclaim at the end of the trial. It is also plain that the circuit court would not have given much weight to Mr. Ridge's opinion that the records demonstrated fraudulent transactions, as the circuit court "place[d] absolutely no value" in his trial testimony, and Goodson has not alleged any clear error associated with that frank assessment of Mr. Ridge's credibility. Therefore, the circuit court did not abuse its discretion when it denied Goodson's amended motion to reopen the case.
J. Cumulative Error
Goodson makes a cumulative-error argument in his final point, asserting that he "has effectively been denied a fair trial due to the multiple errors that occurred during the trial of this matter and set forth in this appeal." He also suggests this court should overrule precedent requiring him to preserve the argument with an objection at trial.
"An appellant asserting a cumulative-error argument must show that there were individual objections to the alleged errors and that the cumulative-error objection was made to the trial court and a ruling was obtained." Southern Farm Bureau Cas. Ins. Co. v. Daggett , 354 Ark. 112, 132, 118 S.W.3d 525, 537 (2003). This court, moreover, must "follow the precedent set by the Supreme Court, and is "powerless to overrule its decisions." Rice v. Ragsdale , 104 Ark. App. 364, 368, 292 S.W.3d 856, 860 (2009).
Goodson does not dispute that he failed to make a cumulative-error objection at trial, and as stated above, this court cannot overrule Daggett 's requirement that he make such an objection to preserve the issue for appellate review. The decree, therefore, is affirmed.
IV. Conclusion
Goodson has failed to raise any error warranting reversal. He waived his challenge to the service of the summons and complaint, and contrary to his claim here, the circuit court considered the evidence at the final hearing to determine that visitation with his minor son was not in the child's best interest. Goodson has similarly failed to demonstrate any error associated with the circuit court's denial of his motion for a continuance or the admission of the transcript of the August 3, 2015, hearing on Bennett's petition for an order of protection. The circuit court also equally divided the marital property, and there is no merit to Goodson's argument that Bennett's behavior warranted an unequal division for his benefit. Goodson also has failed to demonstrate that the circuit court abused its discretion by awarding temporary alimony, by awarding attorney's fees and costs to Bennett, or by limiting the scope of his cross-examination regarding Bennett's past allegations of sexual abuse. Goodson has also failed to preserve his cumulative-error argument for appellate review, and we hold that the circuit court did not abuse its discretion by denying Goodson's amended motion to reopen. Therefore, we affirm the decree.
Affirmed.
Vaught and Hixson, JJ., agree.

We also reject Goodson's suggestion that the decree should also be reversed because the circuit court did not make any finding concerning the "value or division of Giraffe Financial." The testimony at the hearing demonstrated that Giraffe Financial was a premarital asset that was no longer in good standing with the Arkansas Secretary of State and, according to Ms. Bennett, "[was not] worth anything."

Goodson offhandedly raises an additional argument challenging the amount of costs that the circuit court awarded to Bennett, alleging that they were inappropriate because they were not authorized under Arkansas Rule of Civil Procedure 54(d) (2017). He concedes, however, that the costs would be authorized under Arkansas Code Annotated section 9-12-309(a)(2), allowing awards of litigation costs in divorce cases, if a timely motion citing the statute had been filed. Because we conclude, infra , that Bennett indeed filed a timely motion in the circumstances of this case, we affirm.