PHILLIP T. WHITEAKER, Judge
Roy Tuccillo appeals a judgment of the Pope County Circuit Court finding him personally liable to appellee Adkins & Associates, Inc. ("Adkins"), for $ 100,800, plus interest and attorney's fees. On appeal, he argues that the circuit court erred in two respects: (1) in finding that issuance of the summons was properly effectuated pursuant to Arkansas Rule of Civil Procedure 4(a) (2018); and (2) in finding that he personally guaranteed the debts of his company, Anchor Frozen Foods ("Anchor"). We find no error and affirm.
I. Background
Adkins is an Arkansas-based poultry broker. Tuccillo is the president and majority stockholder of a New York-based company, Anchor Frozen Foods. Adkins began selling frozen chicken to Anchor in 2009. To accomplish shipment orders without prepayment, Adkins required Anchor *902 to complete a "Customer Profile Form." Adkins forwarded the form to Anchor, and Anchor returned the form completed with Tuccillo's signature at the bottom.
In March 2012, Anchor ordered 60,000 pounds of frozen chicken from Adkins with a total purchase cost of $ 100,800. Adkins shipped the chicken to Anchor, but Anchor objected to the weight of the goods and refused to pay. Adkins initially attempted collection against Anchor.[1] When those efforts failed, Adkins filed a complaint against Tuccillo, asserting that he had personally guaranteed payment of the Anchor account. Tuccillo answered Adkins's complaint, admitting that Anchor purchased chicken from Adkins but denying that he personally guaranteed payment for Anchor's debts. In addition, Tuccillo asserted insufficiency of service of process as an affirmative defense.[2]
The circuit court was essentially called on to decide two issues: (1) Was Tuccillo properly served under Rule 4(a) of the Arkansas Rules of Civil Procedure ? and (2) Did Tuccillo personally guarantee payment for Anchor? The circuit court found that Tuccillo had been properly served. The court also determined that Adkins had proved the validity of Tuccillo's signature on the guarantee agreement; alternatively, the court found that by his conduct, Tuccillo was estopped from denying the validity of the agreement. The circuit court entered judgment finding that Tuccillo was indebted to Adkins in the amount of $ 100,800, plus interest and attorney's fees. Tuccillo timely appealed.
II. Issuance of Summons
In his first argument on appeal, Tuccillo argues that the circuit court erred in finding that service of process in this case complied with Rule 4(a) of the Arkansas Rules of Civil Procedure. To address this argument, we provide more details concerning the filing of Adkins's complaint, the issuance of summons, and the service on Tuccillo.
Adkins filed its complaint on June 20, 2014. That same day, the Pope County circuit clerk issued a summons informing Tuccillo that the lawsuit had been filed against him. Adkins began its efforts to serve Tuccillo, but these efforts proved difficult. Adkins was required to file multiple motions for extension of time to complete service, each of which was granted.[3] A New York-based process server finally hand-delivered a copy of a summons and complaint on Tuccillo on December 13, 2016. The summons that was eventually served, however, bore a date of June 8, 2016, not the original summons date of June 20, 2014. Tuccillo contends that service on him of a summons dated 719 days after the filing of the complaint was in violation of Rule 4(a) of the Arkansas Rules of Civil Procedure.
Rule 4(a) sets out the requirement for the issuance of a summons and provides that "[u]pon the filing of the complaint, the clerk shall forthwith issue a summons and cause it to be delivered for service to a person authorized by this rule to serve process."[4] Here, the Pope County *903 circuit clerk issued a summons on June 20, 2014, the date of the filing of the complaint. We conclude that this action of the clerk satisfies the language of Rule 4(a) requiring the summons to issue "forthwith."
Tuccillo argues on appeal that he was not served with the summons that had been issued forthwith upon the filing of the lawsuit, on June 20, 2014. Instead, he asserts that he was served with a "completely different" summons dated June 8, 2016.[5] Tuccillo asserts that Adkins served him with a summons dated 719 days after the filing of the complaint, "in violation of the requirement that the summons issue 'forthwith' upon filing of the complaint."
In support of this argument, Tuccillo cites cases holding that the service requirements of Rule 4 must be strictly construed and exactly complied with. See, e.g. , Smith v. Sidney Moncrief Pontiac, Buick, GMC Co. , 353 Ark. 701, 120 S.W.3d 525 (2003) ; Vinson v. Ritter , 86 Ark. App. 207, 167 S.W.3d 162 (2004). We agree that the technical requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly, and compliance with them must be exact. Wilkins v. Food Plus, Inc. , 99 Ark. App. 64, 68, 257 S.W.3d 107, 111 (2007) (citing Tobacco Superstore, Inc. v. Darrough , 362 Ark. 103, 207 S.W.3d 511 (2005) ); see also Davis v. Shelter Ins. , 2017 Ark. App. 656, at 4, 536 S.W.3d 621, 625 (" Rule 4(b)'s technical requirements must be construed strictly, and compliance with them must be exact."). We do not find Tuccillo's arguments persuasive, however.
The plain language of Rule 4(a) states only that the summons be issued "forthwith." Nothing in Rule 4(a), however, expressly provides that the summons must thereupon be served "forthwith."[6] Instead, Rule 4(i) allows 120 days for serving the summons and complaint, unless the court extends the time for service upon good cause shown. As noted above, Tuccillo does not challenge any of the extensions that were granted by the circuit court, and any delay necessitating the issuance of a new summons reflecting the office of the circuit clerk's current personnel was because of Tuccillo's efforts to avoid service. Because he cites no authority that dictates that a subsequent, duplicate summons is ineffective when the first summons was issued "forthwith" upon the filing of the complaint, we affirm on this point.
III. Personal Guaranty
In his second point on appeal, Tuccillo argues that the circuit court erred in finding that he personally guaranteed Anchor's debts. To address this issue, we examine the "Customer Profile" document between Adkins and Anchor. For clarity, we reproduce pertinent portions of the form here:
*904 ADKINS & ASSOCIATES CUSTOMER PROFILE NAME OF BUSINESS: Anchor Frozen Foods TRADE NAME: _________________ BILLING ADDRESS: PO Box 887 Westbury NY 11590 SHIPPING ADDRESS: 28 Urban Ave Westbury NY 11590 NAME(S) OF OWNER, PARTNERS, OR OFFICERS NAME: Roy Tuccillo TITLE: President
Tuccillo thus represented himself at the top of the document as "President" of Anchor. The document further contained the following relevant language:
In consideration of the extension of credit by Adkins & Associates ("Adkins & Assoc.") the undersigned ("Purchaser") at any time and from time hereafter agrees to pay for each purchase of goods or services according to the terms in effect at the time of such purchase as shown on this invoice, statement, or quotation rendered with such purchase. If the purchaser defaults on its payments to Adkins & Assoc., the purchaser agrees to pay all cost of collection, including reasonable attorney's fees, whether or not litigation is actually commenced.
If the purchaser is not an individual, the person or persons (collectively "Guarantor") signing on behalf of the purchaser does (do) hereby personally guarantee to Adkins & Assoc. payment of all [of] purchaser's obligations to Adkins & Assoc. incurred now and hereafter, including cost of collection and reasonable attorney's fees. The guarantor's guarantee shall be continuing in nature, shall continue in full force and effect without limitations, and shall extend to all purchases from Adkins & Assoc. until such time as the guarantor shall give written notice of revocation to Adkins & Assoc. by certified mail, return receipt requested, provided, however, such revocation shall not affect the guarantor's obligations with respect to indebtedness to Adkins & Assoc. existing prior to the receipt of such notice of revocation. The guarantor expressly waives demand, presentment, protest, and notice of acceptance of this guarantee and any extensions of credit for any purchases.
At the bottom of the document the name Roy Tuccillo is listed as the guarantor, along with a signature purporting to be that of Roy Tuccillo and Tuccillo's title of "President."
In its findings of fact and conclusions of law, the circuit court found that Tuccillo's signature on the guaranty agreement was authentic, expressly crediting the testimony of Adkins employee Neal Westbrook, who explained that he sent the form to Anchor and advised Tuccillo that the guaranty form would have to be executed before Adkins would extend credit to Tuccillo and Anchor. On appeal, Tuccillo does not contest the circuit court's finding that the signature on the guaranty agreement was authentic. Instead, he argues that the circuit court erred in finding that he personally guaranteed the debts of Anchor.
Pointing to three separate portions of the agreement, Tuccillo argues that the language of the agreement itself does not bind him. Tuccillo first points to the opening paragraph of the agreement, which contains the following sentence: "[T]he undersigned ('Purchaser') at any time and from time hereafter agrees to pay for each purchase of goods or services according to *905 terms in effect at the time of such purchase." He then points to the next paragraph, which states that "[i]f the purchaser is not an individual, the person or persons (collectively 'Guarantor') signing on behalf of the Purchaser does (do) hereby personally guarantee to Adkins & Assoc. payment of all Purchaser's obligations to Adkins & Assoc." Finally, he points to his signature at the bottom of the agreement. He then posits a somewhat convoluted syllogism: The "purchaser" is the undersigned; the "undersigned" is Roy Tuccillo, an individual; because the purchaser is an individual, the language following "if the Purchaser is not an individual" does not apply; and therefore, he is not bound by the language of the agreement.
We simply cannot find merit in this tortured argument. As found by the circuit court, and unchallenged on appeal, Tuccillo signed the agreement captioned as a "customer profile," and he signed the bottom of the document as "President." President of whom or what? The business named at the top of the agreement as the customer is Anchor Frozen Foods, and no other company is named on the document. Clearly, the "purchaser" under this agreement is Anchor, and Tuccillo quite plainly signed the document as the president of Anchor. By the plain language of the agreement, Anchor agrees to pay Adkins; if Anchor does not pay, then Tuccillo is bound as guarantor.
Tuccillo's reliance on Sysco Food Services v. Coleman , 227 Ga.App. 460, 489 S.E.2d 568 (1997), is misplaced. There, although the alleged guaranty agreement identified the purchaser, it left blank the name of the principal debtor and the name of the person individually guaranteeing the indebtedness. Accordingly, the Georgia Court of Appeals held that the agreement was unenforceable because it failed to satisfy the statute of frauds. Sysco Food Servs. , 489 S.E.2d at 569-70. The court further held that, because Georgia law expressly prohibited the extension of a suretyship contract by implication, the lower court was correct when it found that in order to determine the identity of the debtor, it would have to make inferences and consider impermissible parol evidence. Id. at 570.
These principles simply are not applicable here. The document plainly names the purchaser and the guarantor. There is no statute-of-frauds issue, nor was one raised at trial; and there is no need to resort to inference or parol evidence to determine the identity of the debtor. Simply put, Tuccillo is trying to create ambiguity where none exists.
Our standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. Peregrine Trading, LLC v. Rowe , 2018 Ark. App. 176, 546 S.W.3d 518. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. Id. We are not convinced that a mistake has been committed; therefore, we affirm the finding of the circuit court that the guaranty agreement bound Tuccillo personally to pay the debts of Anchor.[7]
Affirmed.
Virden and Klappenbach, JJ., agree.

Adkins filed a separate lawsuit against Anchor for collection of debt, which was dismissed without appeal.

In addition to the answer, Tuccillo raised both the personal-guarantee argument and the sufficiency of service in a motion for summary judgment, which was denied by the court.

Tuccillo does not challenge any of the extensions of time, nor does he argue that the service that was ultimately had on him was untimely.

An amended version of Rule 4(a) went into effect January 1, 2019, but that version was not in effect at the time the summonses were issued in this case.

The summons that was eventually served is dated June 8, 2016, and is identical to the June 20, 2014 summons in every respect save for the names of the clerk and the deputy clerk, and it omits Tuccillo's address.

Moreover, this court has noted that "forthwith" does not mean a specific number of days. See, e.g. , Maestri v. Signature Bank of Ark. , 2013 Ark. App. 174, at 5, 2013 WL 1007395.

Because we affirm on this point, we find it unnecessary to address Tuccillo's alternative argument that the circuit court erred in finding he was estopped from denying that he personally guaranteed Anchor's debts.